Argued June 4, affirmed September 5, 1975

NOBLE, *Appellant, v.* TERNYIK, *Respondent.*

539 P2d 658

*Kenneth J. Osher,* Springfield, argued the cause for appellant. With him on the briefs were Moore, Wurtz & Logan, Springfield.

*Richard Bryson,* Eugene, argued the cause for respondent. With him on the brief were Calkins & Calkins and Bryson & Robert, Eugene.

DENECKE, J.

This is a defamation action. Plaintiff alleged the defendant, a member of a port commission, slandered him during the course of a port commission meeting. Defendant demurred to the complaint. The trial court first overruled the demurrer, then reconsidered and sustained the demurrer. Plaintiff appeals.

The facts are to be considered as alleged in the complaint, and as admitted by plaintiff. The port commission held a public hearing attended by the defendant as a commission member. Someone proposed that the commission obtain a registered brand to mark the port's logs. During the discussion of that proposal, plaintiff alleges the defendant remarked, "The Port of Siuslaw should buy a log-branding device in order to stop that damn Norman Noble [plaintiff] from stealing any more logs." This is the alleged slander.

Plaintiff further alleged the statement was false and published "maliciously."[1]

The defendant contends the complaint fails to state a cause of action because the statement made

---

[1] We do not decide whether an allegation that the defendant spoke "maliciously" is sufficient to charge malice. See Holden v. Pioneer Broadcasting Co., 228 Or 405, 417-418, 365 P2d 845 (1961), cert den 370 US 157, 82 S Ct 1253, 8 L Ed2d 402 (1962).

by defendant was absolutely privileged and the defendant made the statement as a public officer and, therefore, is immune from liability.

■ Courts have intermingled the terminology of privilege, a part of the law of defamation, and immunity. For example, see comment in *Norton v. McShane,* 332 F2d 855, 858, n 3 (5th Cir 1964), on *Barr v. Matteo,* 360 US 564, 571-572, 79 S Ct 1335, 3 L Ed2d 1434 (1959). There is at least a theoretical difference. Prosser, Torts (4th ed) 970, § 131. There also may be a practical difference; however, we do not need to explore these possible differences in this case.[2] We hold the publication was absolutely privileged.

A port commission is a public body, designated by ORS 777.010 as a municipal corporation, which may exercise a great variety of governmental power including the levying of taxes and the acquiring of property. Ch. 777 ORS. The power and authority of a port commission is invested in a board of commissioners. ORS 777.135.

In determining whether to acquire a registered log brand the port commission was acting in a legislative capacity.

The Congress and state legislatures have always been absolutely privileged in their statements. Prosser, supra, at 781-784; 1 Harper and James, Law of Torts, 427, § 5.23. There has been a divergence of judicial opinion, however, on the question of whether the absolute privilege extends to lesser legislative bodies.

■ The reason for the privilege accorded federal and state legislatures is the belief that it is more essential

---

[2] In a defamation case, the Oregon Court of Appeals held for a public officer on the ground that he was acting in a discretionary manner and, therefore, was immune. Munn v. Burks, 19 Or App 144, 526 P2d 1040 (1974).

that legislators speak freely than defamed persons recover damages for injury to their reputations.

The trend of judicial decisions and legal thought is to extend the absolute privilege to communications of members of lesser legislative bodies. This is well illustrated by what has occurred in the drafting of the Restatement of Torts (Second). The first Restatement of Torts, published in 1938, provided in § 590:

"A member of the Congress of the United States or of the legislature of any State or Territory thereof is absolutely privileged to publish false and defamatory matter of another in the performance of his legislative function." 3 Restatement 236, Torts § 590.

Comment *c.* to that section provided:

"The rule stated in this Section is applicable to members of the Congress of the United States and to members of the highest legislative body of a State or Territory of the United States. It is not applicable to members of subordinate legislative bodies to which the State has delegated legislative power. As to the conditional privilege of members of such bodies, see § 599, Comment *a.*" 3 Restatement, supra, at 237-238.

In the preparation of the Restatement of Torts (Second), § 590 and Comment *c.* remained in that same form through Tentative Draft No. 20, dated April 1974. The latest draft, Tentative Draft No. 21, dated April 1975, however, changed Comment *c.* Comment *c.* now tentatively reads:

"The rule stated in this Section is applicable to members of the Congress of the United States and to members of the highest legislative body of a State. It is also held to be applicable to members of subordinate legislative bodies to which the State has delegated legislative power, such as a

city council or a county board. Under a minority rule, the absolute privilege is held not to be applicable to these legislative members, who may be entitled instead to the conditional privilege set forth in § 598A. * * *." At 43.

Tentative Draft No. 20 contains the latest version of tentative § 598A, which provides:

"AN OCCASION IS CONDITIONALLY PRIVILEGED WHEN AN INFERIOR ADMINISTRATIVE OFFICER OF A STATE, OR OF ANY OF THE SUBDIVISIONS OF THE STATE, MAKES A DEFAMATORY COMMUNICATION WHICH IS REQUIRED OR PERMITTED IN THE PERFORMANCE OF HIS OFFICIAL DUTIES." At 216.

The tentative draft of § 590 granting absolute privilege to communications made by members of lesser legislative bodies may never be approved by the American Law Institute. If it is, of course, we are not bound to concur, nor do we necessarily follow any trend of decisions from other jurisdictions.

We have reached the conclusion, however, that the tentative Restatement approach is preferable. Uncompensated citizens, serving at least in part to fulfill their civic responsibility, comprise the vast bulk of numerous legislative bodies in Oregon. Port commissions, city councils, school boards, and special service districts are some of these bodies. Oregon prides itself on its citizen participation. These bodies make economic, social, educational, and other important decisions. This system will function only if capable people are willing to serve on these bodies.

We are of the opinion that a substantial number of capable people would be reluctant to serve if their statements, made in the course of their legislative duties, were only conditionally privileged; that is, priv-

ileged only if the finder of fact found the statements were not made maliciously.

We are also of the opinion that persons who would be willing to serve would be hesitant to bring information to the attention of their legislative bodies if the publication of this information were only conditionally privileged. Such information could be vital to reaching a correct legislative decision.

■ The members of public bodies in Oregon cannot disclose information in the sanctuary of a closed meeting. The Public Meetings Law requires that the meetings of public bodies be public. ORS 192.620 provides:

"The Oregon form of government requires an informed public aware of the deliberations and decisions of governing bodies and the *information* upon which such decisions were made. It is the intent of ORS 192.610 to 192.690 that decisions of governing bodies be arrived at openly." (Emphasis added.)

In Oregon, members of legislative bodies must either impart their information for all to hear and endure a possible defamation action and ensuing judgment, or remain mute and thereby not completely participate in the role to which they have been appointed or elected.

Of course, it is not our purpose to protect the malicious defamers. Judge Learned Hand has been quoted innumerable times on this issue:

"It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification

for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. * * *." *Gregoire v. Biddle,* 177 F2d 579, 581 (2d Cir 1949).

*Ivie v. Minton,* 75 Or 483, 147 P 395 (1915), is not controlling, for the court was concerned with a communication by a city councilman to another council committee on which the defendant did not serve. The defendant councilman was speaking in the role of a private citizen to a legislative body. In *Demers v. Meuret,* 266 Or 252, 255-256, 512 P2d 1348 (1973), we held such a communication was only conditionally privileged. We have deemed statements by legislators in the course of discharging their duties to be absolutely privileged, whereas statements by others to the legislative body are only to be accorded a conditional privilege. The Restatement makes the same distinction. 3 Restatement, Torts, supra, 260, § 598.

Affirmed.