J. I. CORNETT and J. I. Cornett Construction Company, Inc., Appellants,

v.

John FETZER, Appellee.

Court of Appeals of Tennessee, Eastern Section.

June 18, 1980.

Certiorari Denied by Supreme Court Sept. 2, 1980.

Thomas E. Cowan, Jr. of Tucker, Cowan, LaPorte & Norris, Elizabethton, for appellants.

William T. Gamble and Frank A. Johnstone of Wilson Worley, Gamble & Ward, Kingsport, John Bowers, Jr. and John Bowers, III, of Allen, Nelson & Bowers, Elizabethton, for appellee.

## OPINION

PARROTT, Presiding Judge.

Appellants, J. I. Cornett and J. I. Cornett Construction Company, Inc. brought this suit seeking compensatory and punitive damages resulting from several allegedly defamatory statements [1] made by appellee, John Fetzer, while in his capacity as a member of the Elizabethton City Council. Appellee filed a motion for summary judgment, claiming that the remarks were privileged. The trial judge granted the motion, and this appeal followed.

On March 8, 1979, during a regularly scheduled meeting of the Elizabethton City Council, appellee made several remarks concerning the design and construction of the roof on the Elizabethton Comprehensive High School. Appellant, J. I. Cornett, was the general contractor for the construction of that school. These remarks were seemingly precipitated by appellee's review of the proposed budget for the city school system submitted to City Council. The budget contained an item for the maintenance of school buildings within Elizabethton, including the Elizabethton Comprehensive High School. In an affidavit filed in support of his motion for summary judgment, appellee states that his statements grew out of a concern that the allocation for school building maintenance in the budget was inadequate in light of the condition of the Elizabethton Comprehensive High School.

█ The sole issue presented by this appeal is whether the remarks made by appellee were privileged since they were made in his role as city council member. There has

1. See Appendix.

not been, to our knowledge, any prior reported Tennessee decision that has considered whether a privilege, either absolute or conditioned, is to be afforded members of subordinate legislative bodies. However, we feel that—in view of the Tennessee and Federal Constitutions and several well—reasoned authorities from other jurisdictions—an absolute privilege should be recognized in this state for remarks made by city council members which relate to matters within the scope of that body's authority.

Through Article 1, Section 6, of the United States Constitution, the concept of absolute privilege is conferred upon members of Congress with respect to defamatory matters published in the performance of their legislative function. 50 A.L.R.2d, Libel and Slander, § 221. The Constitution of this State also embodies the concept of absolute privilege in Tenn.Const. Art. 2, § 13:

> Senators and Representatives shall, in all cases, except treason, felony, or breach of the peace, be privileged from arrest during the session of the General Assembly, and in going to and returning from the same; and for any speech of debate in either House, they shall not be questioned in any other place.

These constitutional provisions reflect the obvious policy determination that the importance of legislators freely speaking their minds outweighs the countervailing argument that those people who are defamed should be able to recover damages for injury to their reputations.

We feel that the above policy is equally relevant and should apply with equal weight with regard to subordinate legislative bodies. Such lesser legislative entities make important social and economic decisions that many times affect our lives to a greater degree than do decisions made by our state legislators and congressmen. If the utterances of members of the legislative bodies such as city councils are not cloaked with an absolute privilege, an unwarranted consideration—personal monetary liability—will be interjected into a councilman's decision making process. This, we feel, would have the unavoidable effect of inhibiting the independent and forceful debate out of which decisions which best serve the interests of the populace are borne.

We further feel that the privilege which protects officials, such as in the case at bar, should be absolute rather than qualified. We agree with the reasoning in *Noble v. Ternyik*, 273 Or. 39, 539 P.2d 658 (1975) wherein the Supreme Court of Oregon held that a port Commissioner's defamatory remarks should be shrouded with an absolute, not qualified, privilege:

> We are of the opinion that a substantial number of capable people would be reluctant to serve if their statements, made in the course of their legislative duties, were only conditionally privileged; that is, privileged only if the finder of fact found the statements were not made maliciously.
>
> We are also of the opinion that persons who would be willing to serve would be hesitant to bring information to the attention of their legislative bodies if the publication of this information were only conditionally privileged. Such information could be vital to reaching a correct legislative decision.

We are prompted, in part, to grant the privilege to a city councilman for his remarks by the prospect that the element of personal monetary liability unnecessarily interjected into the decision making process may inhibit that person's independence of judgment. Like the Court in *Noble*, we are further prompted to grant an absolute—not qualified—privilege by the prospect that the fear of being summoned to a courtroom so that the motives prompting uncomplimentary remarks may be scrutinized could have the same inhibiting effect.

The absolute privilege which we hold applicable in the case at bar does not give a member of a subordinate legislative body the right to use his or her position as a forum for private slanders against others. Since one reason behind granting a privilege such as we have granted today is to insure an uninhibited debate concerning matters before a legislative body, it follows that such a privilege is applicable only if

the defamatory remarks are made relating to matters within the scope of that body's authority. In the case at bar, appellee's remarks were certainly within council's legitimate legislative sphere as they were made with reference to the proposed budget of the school board, a budget which had to be approved or disapproved by city council.

It is not the purpose of this Court to license malicious defamers. However, we feel the policy choice we make today is the correct one. Moreover, we feel the choice we make is necessary, as Judge Learned Hand pointed out in *Gregoire v. Biddle*, 177 F.2d 579 (2d Cir. 1949):

> It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith.

The action of the trial court in granting the motion for summary judgment is affirmed. Let the costs be taxed to the appellant.

SANDERS and GOODARD, JJ., concur.

### APPENDIX

The following are several of the statements made by appellee which appellant urges forms the basis for this action:

Well my question is, they are traveling on that letter apparently then that you've written them that they don't need to do anything and they're lulled to sleep that the School House is gonna, I guess J. I. and Houdini's got it fixed. I wonder how it is tonight.

. . . . .

Maybe they've waved a wand, Houdini might have waived a wand down there and got it stopped.

. . . . .

I'm telling you I've had a number of friends suggest to me that we change the name of town to the City of Elizabethton to the Cornett City and the High School then to Cornett City Leaky High School. Now I've had people suggest that to me. And I, but I want us to keep it City of Elizabethton up and above board and get that high school straightened out and all these buildings around here and keep our property and maintain it. I think we've got a high obligation to do that all of us.

. . . . .

Ah . . they're putting some bandaids on the roof Mr. Attorney. Yeah, they're putting some bandaids up there, I'll guarantee you they're doing that, yeah. But I'll bet you it's leaking tonight if they're down there you can find some I'll bet you.

. . . . .

I don't know who's going to fix all them pretty things overhead that's fell down down there all over that building. I mean plenty of them all over the building. While the carpet comes up in about six months, down there it's going to rot and come up I'm telling you. When it brings up the fact of the concrete with it then we're talking about two or three hundred dollars more or thousand dollars more in damage.