854 P.2d 126

Fred SANCHEZ and Nora Sanchez, husband and wife, Petitioners,

v.

The Honorable Franklin D. COXON, a Judge for the Superior Court of the State of Arizona, County of Pinal, Respondent,

and

Oscar S. SKINNER and Jeffrey A. Baugher, Real Parties in Interest.

No. CV–92–0165–PR.

Supreme Court of Arizona, En Banc.

May 20, 1993.

Surrano & Massey by Charles J. Surrano, III, Yancey N. Burnett, Larry J. Crown, Phoenix, for petitioners.

Law Offices of A. Thomas Cole by Thomas M. Larson, Casa Grande, for real parties in interest.

## OPINION

FELDMAN, Chief Justice.

This petition for review seeking special action relief [1] asks us to decide whether the trial court erred when it found that a town councilman's statements were not protected by an absolute legislative immunity.[2] Ariz.R.P.Spec. Act. 3.

## FACTS AND PROCEDURAL HISTORY

On September 5, 1990, the town council of Mammoth, Arizona, held a regularly scheduled meeting. During this meeting, but apparently while no legislation was proposed, pending, or contemplated, Councilman Fred Sanchez criticized the Mammoth Chief of Police and another police officer. We do not quote his statements (which allegedly were false and made with knowledge of their falsity). In substance, however, the statements were that the officers did not attempt to prevent an alleged confrontation between the Mayor and Councilman Sanchez, that the officers were fingering their pistols during this confrontation, that the officers were insubordinate, and that there had been numerous complaints about the officers' conduct on previous occasions.

The police officers brought a defamation action against Sanchez and his wife (collectively "Petitioners"). Petitioners moved alternatively to dismiss or for summary judgment, arguing, *inter alia*, that an absolute legislative immunity protected the statements. The trial court denied these motions. Petitioners sought special action relief from the court of appeals. That court declined jurisdiction, and Petitioners filed a petition for review with this court. We granted review of the following issues:

1. Whether Arizona recognizes an absolute legislative immunity for city and town council members.

2. Whether Arizona recognizes an absolute legislative immunity for a legis-

lator speaking to a legislative body during a formal legislative meeting.

## SPECIAL ACTION JURISDICTION

■ Appeal after entry of judgment typically is the proper method to challenge the denial of a motion to dismiss or for summary judgment. *United States v. Superior Court*, 144 Ariz. 265, 269, 697 P.2d 658, 662 (1985). Special action petitions used as interlocutory appeals are discouraged. *Alhambra Sch. Dist. v. Superior Court*, 165 Ariz. 38, 40 & n. 3, 796 P.2d 470, 472 & n. 3 (1990). This court, however, has discretion in deciding whether to accept special action jurisdiction. *State Comp. Fund v. Symington*, 174 Ariz. 188, 191, 848 P.2d 273, 276 (1993). We decide whether to accept jurisdiction independent of the court of appeals' determination. *See Collins v. Superior Court*, 158 Ariz. 145, 145, 761 P.2d 1049, 1049 (1988); *Bates v. Superior Court*, 156 Ariz. 46, 48, 749 P.2d 1367, 1369 (1988).

■ Although the parties agree that we should accept jurisdiction, we must independently determine whether special action jurisdiction is appropriate. *Maricopa County v. Superior Court*, 170 Ariz. 248, 250–51, 823 P.2d 696, 698–99 (Ct.App.1991). Numerous factors favor accepting jurisdiction in this case. The issues presented have statewide importance, *Bledsoe v. Goodfarb*, 170 Ariz. 256, 258, 823 P.2d 1264, 1266 (1991), are pure questions of law, *State Comp. Fund*, 174 Ariz. at 192–193, 848 P.2d at 277–278, and are issues of first impression for this court, *Rios v. Symington*, 172 Ariz. 3, 5, 833 P.2d 20, 22 (1992). Our decision on the merits terminates the litigation, *Cardon v. Cotton Lane Holdings, Inc.*, 173 Ariz. 203, 210, 841 P.2d 198, 205 (1992), and declining jurisdiction would require Petitioners to stand trial—thereby losing much of the benefit of their claimed immunity, *Henke v. Superior Court*, 161 Ariz. 96, 99–100, 775 P.2d 1160,

---

1. In Arizona, relief formerly obtained by writs of certiorari, mandamus, or prohibition is now obtained by "special action." Ariz.R.P.Spec.Act. 1.

2. "Immunity" and "privilege" are often used interchangeably. In light of *Chamberlain v. Mathis*, 151 Ariz. 551, 554 n. 1, 729 P.2d 905, 908 n. 1 (1986), we use "immunity" throughout this opinion.

1163–64 (Ct.App.1989). Indeed, the denial of Councilman Sanchez' claimed immunity defeats the very purpose for such an immunity—encouraging free speech. *Scottsdale Publishing, Inc. v. Superior Court,* 159 Ariz. 72, 74, 764 P.2d 1131, 1133 (Ct.App. 1988). In light of these factors, we accept special action jurisdiction. We have jurisdiction pursuant to Ariz. Const. art. VI, §§ 5(3), 5(4), Ariz.R.P.Spec.Act. 8(b), and Ariz.R.Civ.App.P. 23.

## DISCUSSION

### A. Scope of this Decision

Our immunity decisions have given "conflicting signals." *Chamberlain v. Mathis,* 151 Ariz. 551, 557, 729 P.2d 905, 911 (1986). Thus, we note what this case does *not* involve. We are not presented with a claimed immunity for statements made in purely executive or judicial proceedings. Accordingly, we do not face the case-specific, factual inquiry required in deciding whether executive immunity is absolute or qualified. *Id.* at 556–58, 729 P.2d at 910–12.[3] Nor are we bound by case law mandating absolute judicial immunity. *Chamberlain,* 151 Ariz. at 558, 729 P.2d at 912.[4] As a result, the Arizona cases cited by the parties addressing judicial or executive immunity are inapposite.

The only question we decide is whether city and town council members have absolute legislative immunity for words spoken during a formal council meeting. Although the parties quote dicta from several cases,[5] they do not cite, nor have we found, any Arizona case or statute squarely addressing this issue. Thus, we write on a comparatively clean slate.

### B. Legislative Immunity

■ By constitutional mandate, an absolute legislative immunity protects statements made by federal and Arizona legislators during formal legislative meetings. *See* U.S. Const. Art. I, § 6, cl. 1; Ariz. Const. Art. IV, pt. 2, § 7. In other states, this type of protection has not been uniformly applied to city council members. However, "[t]he trend of judicial decisions and legal thought is to extend the absolute privilege to communications of members of lesser legislative bodies." *Noble v. Ternyik,* 273 Or. 39, 539 P.2d 658, 660 (1975). This trend is best illustrated by the Restatement of Torts—a source to which we frequently turn in defamation cases. *See, e.g., Turner v. Devlin,* 174 Ariz. 201, 206, 848 P.2d 286, 291 (1993); *Yetman v. English,* 168 Ariz. 71, 77–78 n. 3, 81 n. 7, 811 P.2d 323, 329–30 n. 3, 333 n. 7 (1991); *Dombey v. Phoenix Newspapers, Inc.,* 150 Ariz. 476, 491, 724 P.2d 562, 577 (1986).

In the late 1930s, the Restatement of Torts provided that an absolute immunity protected members of Congress, as well as state and territorial legislators, from defamation actions for statements made in the performance of their legislative function. Restatement of Torts § 590 (1938). This immunity, however, *did not* apply to "subordinate legislative bodies to which the State has delegated legislative power." *Id.* cmt. c. A qualified immunity protected members of these subordinate legislative bodies. *Id.*

The Second Restatement, published nearly forty years later, retained absolute immunity for federal and state legislators. Restatement (Second) of Torts § 590 (1977). Unlike the First Restatement, however, this absolute immunity *is* "applicable to members of subordinate legislative bodies

---

**3.** *See also Ryan v. State,* 134 Ariz. 308, 311, 656 P.2d 597, 600 (1982); *Portonova v. Wilkinson,* 128 Ariz. 501, 503, 627 P.2d 232, 234 (1981); *Grimm v. Arizona Bd. of Pardons & Paroles,* 115 Ariz. 260, 265, 564 P.2d 1227, 1232 (1977).

**4.** *See also Green Acres Trust v. London,* 141 Ariz. 609, 613, 688 P.2d 617, 621 (1984); *Western Technologies, Inc. v. Sverdrup & Parcel, Inc.,* 154 Ariz. 1, 4, 739 P.2d 1318, 1321 (Ct.App.1986);

*Todd v. Cox,* 20 Ariz.App. 347, 348–50, 512 P.2d 1234, 1235–37 (1973).

**5.** *Compare Ross v. Duke,* 116 Ariz. 298, 301, 569 P.2d 240, 243 (Ct.App.1977) (absolute immunity "arises in ... legislative proceedings."), *with Carlson v. Pima County,* 141 Ariz. 487, 492, 687 P.2d 1242, 1247 (1984) (no absolute immunity "for public officers and employees of the state and its political subdivisions.").

to which the State has delegated legislative power, *such as a city council."* *Id.* cmt. c (emphasis added). Thus, under the Second Restatement, city and town council members are protected by an absolute immunity.[6] The First Restatement now represents the minority rule. Restatement (Second) of Torts § 590 cmt. c.[7]

The stated rationale supporting absolute immunity for council members varies but frequently includes attracting qualified council members, council members' need for candor, and the chilling effect accompanying a qualified privilege. *See, e.g., O'Donnell v. Yanchulis,* 875 F.2d 1059, 1063 (3d Cir.1989) (construing Pennsylvania law); *Noble,* 539 P.2d at 661; *Cornett v. Fetzer,* 604 S.W.2d 62, 63 (Tenn.Ct.App. 1980). We agree with the Oregon Supreme Court's observation that "a substantial number of capable people would be reluctant to serve if their statements, made in the course of their legislative duties, were ... privileged only if the finder of fact found the statements were not made maliciously." *Noble,* 539 P.2d at 661. A qualified privilege would also hinder debate and discussion. *See id.*

We are mindful of the abuses that can accompany any grant of immunity. As Judge Learned Hand commented:

It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.

*Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950). Self-discipline and the power of the vote to defeat abusers of the privilege "must be the ultimate reliance for discouraging or correcting such abuses." *Tenney v. Brandhove,* 341 U.S. 367, 378, 71 S.Ct. 783, 789, 95 L.Ed. 1019 (1951).

Adopting a qualified, rather than an absolute, immunity in the context of this case would compel judicial inquiry into the motives for statements made by council mem-

---

6. *See also* 53 C.J.S. *Libel & Slander* § 76 at 142–43 (1987) (as a general rule, absolute legislative immunity applies to "all legislative bodies, whether federal, state, municipal or local") (footnotes omitted); 50 Am.Jur.2d *Libel & Slander* § 222 at 733 (1970) (although some courts apply qualified immunity to municipal councils, "other courts hold or recognize that at least under some circumstances members of a municipal council ... are entitled to the complete defense afforded by absolute privilege for utterances made by them during the course of official proceedings.") (footnotes omitted).

7. It is unclear when the Second Restatement became the majority view. By 1955, "[i]n the majority of the comparatively few cases wherein the defense of absolute privilege was raised, the courts ... have held or recognized that at least under some circumstances members of governing bodies of political subdivisions are entitled to the complete defense afforded by this privilege." Annotation, *Libel and Slander: Statements or Utterances by Member of Municipal Council, or of Governing Body of Other Political Subdivision, in Course of Official Proceedings, as Privileged,* 40 A.L.R.2d 941, 943 (1955).

bers during often heated debates. Such an intrusive and probing inquiry would come at too high a cost in light of its chilling effect. *See Gregoire,* 177 F.2d at 581. Without absolute immunity, it could be argued that only the foolish or irresponsible would serve as council members. Absolute immunity avoids discouraging qualified and otherwise willing individuals from seeking city or town council membership.

Nor is any good reason advanced for the proposition that city or town council members should be more inhibited in debate than state or federal legislators.

Many local law-makers receive little or no compensation and, at times, legislate on matters of more immediate importance to their electorate than state or federal legislators. Such legislation should be based on all relevant information—both favorable and unfavorable—and subjected to the most vigorous debate possible.

In light of these important interests, and at least under the facts of this case, we adopt the absolute immunity concept of the Restatement (Second) of Torts § 590. Because the Arizona legislature delegated legislative powers to city and town councils, A.R.S. § 9–240, such councils are "subordinate legislative bodies to which the State has delegated legislative power," Restatement (Second) of Torts § 590 cmt. c. Councilman Sanchez' statements were made by a town council member at a formal council meeting during the course of that meeting. Therefore, the statements are protected by an absolute immunity. *See, e.g., Grady v. Scaffe,* 435 So.2d 954, 955 (Fla.Ct.App.1983); *Gidday v. Wakefield,* 90 Mich.App. 752, 282 N.W.2d 466, 468–69 (1979); *Richardson v. McGill,* 273 S.C. 142, 255 S.E.2d 341, 343–44 (1979).[8]

## C. Legislative vs. Executive Function

■ Respondents contend that absolute immunity does not apply because Councilman Sanchez was not acting as a legislator but rather as an executive or an administrator when he made the challenged statements. Specifically, Respondents urge

that no legislation was proposed, pending, or contemplated when the statements were made and that the content of the statements (complaints about police officers' official conduct) was executive or administrative rather than legislative. Without deciding whether all actions by city or town council members are legislative, we hold that Councilman Sanchez acted as a legislator when he spoke at the Mammoth town council meeting.

■ The specific content of the challenged statements does not make such speech executive or administrative. An absolute legislative privilege applies to legislators "performing a legislative function *although the defamatory matter has no relation to a legitimate object of legislative concern.*" Restatement (Second) of Torts § 590 cmt. a (emphasis added). When Councilman Sanchez made the statements, he was a legislator speaking to a legislative body during a formal legislative meeting—clearly a legislative function. *Id.; cf. Acevedo v. Pima County Adult Probation Dep't,* 142 Ariz. 319, 322, 690 P.2d 38, 41 (1984) (discussing "judicial acts"). It is the occasion of the speech, not the content, that provides the privilege. *See, e.g., Polson v. Davis,* 635 F.Supp. 1130, 1148 (D.Kan.1986) (construing Kansas law), *aff'd on other grounds,* 895 F.2d 705 (10th Cir.1990); *Grady,* 435 So.2d at 955; *Williams v. School Dist.,* 447 S.W.2d 256, 267 (Mo.1969), *overruled on other grounds by Bass v. Nooney Co.,* 646 S.W.2d 765 (Mo.1983). Any other rule would frustrate the purposes for which immunity is granted. Thus, we reject the claim that, due to the nature of the statements, Councilman Sanchez acted in an executive or administrative manner when he spoke at the council meeting.

## CONCLUSION

■ We do not favor immunity from common law liability. *See Grimm v. Arizona Bd. of Pardons & Paroles,* 115 Ariz. 260, 264–66, 564 P.2d 1227, 1231–33 (1977).

---

**8.** We leave open possible further application or extension of the rule of absolute immunity in cases that fall short of this factual situation. *See* Restatement (Second) of Torts § 590 cmt. a.

Lack of responsibility can breed lack of care. There are situations, however, when legal principles strongly favor unrestrained freedom of speech over countervailing concerns. Legislative debate is one of these rare situations.

It is said that in the British House of Commons—the mother of all legislative bodies—the opposing benches are separated by the length of two arms, the length of two swords, and six inches so that words are the only weapons in debate. To be effective, these words must be unrestrained. Thus, we hold that Councilman Sanchez' statements are absolutely privileged. We vacate the trial court's order denying Petitioners' motion to dismiss or for summary judgment. This case is remanded to the trial court for the entry of judgment for Petitioners.

MOELLER, V.C.J., and CORCORAN, ZLAKET and MARTONE, JJ., concur.