Strafford
No. 2001-088

GEORGE PIERSON

v.

ANDREA HUBBARD

Argued: February 7, 2002
Opinion Issued: June 10, 2002

*Cleveland, Waters and Bass, P.A.*, of Concord (*Mark D. Wiseman* on the brief and orally), for the plaintiffs.

*Devine, Millimet & Branch, P.A.*, of Manchester (*John P. Sherman* on the brief and orally), for defendant Andrea Hubbard.

*Ransmeier & Spellman, P.C.*, of Concord (*John T. Alexander* on the brief and orally), for defendant Town of Effingham.

BROCK, C.J. The plaintiffs, George and Maxine Pierson, appeal from the Trial Court's (*T. Nadeau*, J.) dismissal of a claim against defendant Town of Effingham (town), and grant of summary judgment to defendant Andrea Hubbard. They argue that: (1) the town was not absolutely immune from liability for the allegedly defamatory statements Hubbard made at a meeting of the board of selectmen; and (2) the trial court erred in granting summary judgment to Hubbard. We reverse.

Considering the record in the light most favorable to the plaintiffs, the relevant facts follow. *See Collectramatic, Inc. v. Kentucky Fried Chicken*

*Corp.*, 127 N.H. 318, 320 (1985); *Del Norte, Inc. v. Provencher*, 142 N.H. 535, 537 (1997). Hubbard was the elected town clerk and tax collector for the town. On August 22, 1999, she received a telephone call from Arlene Taylor, a town resident. A member of Mrs. Taylor's family had passed away and the funeral was scheduled for August 24, but Mrs. Taylor had been unable to contact the cemetery trustees or the board of selectmen to purchase a plot in the town cemetery.

Early the next morning, Hubbard contacted one of the town's selectmen and advised him of Mrs. Taylor's attempts to contact town officials. Hubbard proposed to provide a draft deed to the cemetery plot to allow the burial to take place on August 24, with the understanding that the selectmen and town treasurer, who were required to authorize and approve the sale of the cemetery plots, would not execute the deed until their meeting scheduled for August 26. The selectman advised her to initiate the deed, collect the money and allow the burial to proceed. The burial took place as scheduled.

The selectmen met as scheduled on August 26, 1999. That day, a member of the board of selectmen asked Hubbard to attend the meeting to explain what had occurred with the sale of the two cemetery plots. During the meeting, Hubbard explained her involvement in the sale of the two cemetery plots, provided the selectmen with the draft deed and advised them that they needed to sign it to formalize the sale of town property. Hubbard also stated that Mrs. Taylor's husband had contacted her by telephone to report that the funeral home director had told the family that two town residents had approached the gravedigger while he was filling the grave and told him that the body might be buried in the wrong location. Hubbard also explained that Mr. Taylor and his family were extremely upset.

According to the plaintiffs, Hubbard also stated that they had

"verbally abused and taunted" the Town's grave-digger by stating, among other things, "don't bother, you'll have to dig him up anyway." Ms. Hubbard stated that the family of the decedent was present during this exchange. She stated that the family was upset and crying because of what the Piersons had done. Ms. Hubbard indicated that what the Piersons had allegedly done was "absolutely disgraceful" and "distasteful." The Defendant Hubbard indicated that she wanted the matter addressed by the Board.

The plaintiffs brought claims against the town and Hubbard alleging defamation and negligent and intentional infliction of emotional distress. Both defendants moved to dismiss on the grounds that Hubbard was

absolutely immune from suit. After identifying as the "key issue" whether the plaintiffs had alleged any facts supporting a finding that Hubbard acted in an individual capacity, the Superior Court (*Smukler*, J.) concluded that the writ contained no such facts. The court allowed the plaintiffs to file an amended writ, which they did. Shortly thereafter, the town filed a motion to dismiss, arguing that: (1) if Hubbard acted within the scope of her employment, both she and the town were protected by absolute immunity; and (2) if Hubbard acted outside of the scope of her employment, the town could not be held vicariously liable for her allegedly defamatory statements. The Superior Court (*T. Nadeau*, J.) granted the town's motion to dismiss. The court also later granted Hubbard's motion for summary judgment, ruling that she acted in her official capacity when she made the allegedly defamatory statements, and that she had absolute immunity in connection with the statements.

The standard of review in considering a motion to dismiss is "whether the allegations [in the plaintiffs' pleadings] are reasonably susceptible of a construction that would permit recovery." *Collectramatic, Inc.*, 127 N.H. at 320 (quotation omitted). We assume the truth of the plaintiffs' pleadings and construe all reasonable inferences therefrom in the light most favorable to the plaintiffs. *Id.*

The amended writ asserts that Hubbard made the allegedly defamatory statements "in her official capacity and within the course and scope of her duties as Clerk of the Town of Effingham." Because the writ does not allege any independent act or wrongful conduct by the town, the town's liability, if any, would be predicated solely on its status as Hubbard's employer. Therefore, the town argues, if Hubbard's statements were absolutely privileged and Hubbard is absolutely immune from suit, then the town cannot be held liable. Because we disagree for the reasons that follow that Hubbard is absolutely immune from suit, we hold that the trial court erred in granting the town's motion to dismiss on this ground.

■■■ A plaintiff proves defamation by showing that the defendant failed to exercise reasonable care in publishing a false and defamatory statement of fact about the plaintiff to a third party, assuming no valid privilege applies to the communication. *See Indep. Mechanical Contractors v. Gordon T. Burke & Sons*, 138 N.H. 110, 118 (1993). *See generally* RESTATEMENT (SECOND) OF TORTS § 558 (1997). Privileged communications are generally divided into two classes: (1) those that are absolutely privileged; and (2) those that are qualifiedly or conditionally privileged. *See* Annotation, *Libel and Slander*, 40 A.L.R. 2D 941, 942 (1955). If a communication is absolutely privileged, the speaker is absolutely immune from suit regardless of his or her motive in making the

communication. *See Pickering v. Frink*, 123 N.H. 326, 328 (1983). If a communication is conditionally or qualifiedly privileged, however, the speaker's immunity from suit may be lost if the communication was not "published on a lawful occasion, in good faith, for a justifiable purpose, and with belief, founded on reasonable grounds, of its truth." *Id.* at 329. In the case of a conditional or qualified privilege, the question whether the speaker is entitled to claim the privilege is one for the trier of fact. *See id.*

■ "The classification of absolutely privileged communications is narrow." 50 AM. JUR. 2D *Libel and Slander* § 275 (1995). Indeed, we have cautioned that "the availability of an absolute privilege must be reserved for those situations where the public interest is so vital and apparent that it mandates complete freedom of expression without inquiry into a defendant's motives." *Supry v. Bolduc*, 112 N.H. 274, 276 (1972). For reasons of public policy, however, courts have long recognized an absolute immunity for members of legislative bodies for acts in the performance of their duties. *See* 8 S. SPEISER ET AL., THE AMERICAN LAW OF TORTS § 29.93, at 629 (1991). Were legislators granted only qualified immunity, "the public's right to know would be hampered as officials with legitimate information would be inhibited from bringing it to the public's attention— not because the information is thought to be arguably inaccurate—but because the officials would know that their comments could entangle them in a legal dispute which almost surely could only be resolved through a full trial." *Chonich v. Ford*, 321 N.W.2d 693, 697 (Mich. Ct. App. 1982). "The trend of judicial decisions and legal thought is to extend the absolute privilege to communications of members of lesser legislative bodies." *Noble v. Ternyik*, 539 P.2d 658, 660 (Or. 1975); *see also Sanchez v. Coxon*, 854 P.2d 126, 128 (Ariz. 1993); *Chonich*, 321 N.W.2d at 695; *Cornett v. Fetzer*, 604 S.W.2d 62, 63 (Tenn. Ct. App. 1980); RESTATEMENT (SECOND) OF TORTS § 590, at 254 comment a (member of subordinate legislative body to which the State has delegated legislative power, such as a city council, is absolutely privileged to publish defamatory matter concerning another in the performance of member's legislative functions).

Consistent with this trend, we held recently that a report made by a member of the board of selectmen at a town meeting regarding the recent termination of a police chief was absolutely privileged. *See Voelbel v. Town of Bridgewater*, 144 N.H. 599, 601 (1999). In *Voelbel*, we reasoned that "the sounder rule of law favors granting municipal officials, acting in a legislative capacity, absolute immunity for their comments made during a town meeting regarding town matters." *Id.* at 600. We also reasoned that because the selectman's comments were made at the town meeting, involved issues arising from the selectman's duties, related to a matter of

local importance, and involved a matter properly before the town meeting, they were absolutely privileged whether or not the plaintiff's termination was listed as a subject on the town meeting warrant. *Id.* at 601. Our decision was based in large part upon the fact that the alleged defamatory statements were made by a member of a local legislative body in the performance of his legislative functions. *See* RESTATEMENT (SECOND) OF TORTS § 590. Because we conclude that town clerk and tax collector Hubbard's statements were not made at a meeting of the legislative body in the performance of a legislative function, they are not absolutely privileged.

■ The board of selectmen is the governing body of all towns operating under the town meeting form of government. *See* 13 P. LOUGHLIN, NEW HAMPSHIRE PRACTICE, LOCAL GOVERNMENT LAW § 472, at 369 (1995). The selectmen are officers who form an executive that carries out certain statutory duties and any orders enacted by the town meeting, which is the legislative body. *Id.* Legislative decision-making is done at the annual town meeting, *see id.*; RSA 39:1 (2000), or any town meeting specially warned by the board of selectmen, *see* RSA 39:4 (2000). Between town meetings, the board of selectmen meet to carry out its function of managing the "prudential affairs of the town" and performing duties otherwise "by law prescribed." RSA 41:8 (1991). However, unlike city councils, for example, boards of selectmen do not exercise any legislative power while conducting their meetings because they are simply carrying out the mandates of the legislative body. *Cf. Sherburne v. Portsmouth*, 72 N.H. 539, 540-41 (1904) (noting that while duties of city councils are both legislative and administrative, the duties of the selectmen are administrative and judicial).

■ One of the board's duties "by law prescribed" is signing deeds of cemetery lots prepared by the cemetery trustees. *See* RSA 289:7, I(e) (1999); RSA 41:9, VI (Supp. 2001). In the present case, because the cemetery trustees were apparently unavailable, Hubbard undertook, at the request of the selectmen, the task of preparing the deed. At the next weekly meeting of the board of selectmen, Hubbard explained her involvement in the sale of the two cemetery lots, provided the selectmen with the draft deed and advised them that they needed to sign it to formalize the sale of the town property. It is clear from these facts that both the board's and Hubbard's functions were administrative and ministerial, *not* legislative. Therefore, Hubbard's comments were not absolutely privileged, she was not absolutely immune from suit, and the trial court erred in dismissing the claim against the town on the grounds of absolute legislative immunity. We do not address the potential

applicability of other kinds of immunity, because the basis of the trial court's decision, and the issue briefed by the parties on appeal, related only to the question of whether absolute legislative immunity applied.

The town argues in the alternative that even if Hubbard's statements were not absolutely privileged, the motion to dismiss should have been granted because Hubbard acted outside the scope of her employment when she made the allegedly defamatory comments. We disagree.

The town's liability is predicated on the doctrine of *respondeat superior*, which provides that an employer may be held vicariously responsible for the tortious acts of its employee if the employee was acting within the scope of his or her employment when his or her tortious act injured the plaintiff. *See Daigle v. City of Portsmouth*, 129 N.H. 561, 579 (1987). An employee's conduct falls within the scope of his or her employment if: (a) it is of the kind he or she is employed to perform; (b) it occurs substantially within the authorized time and space limits; and (c) it is actuated, at least in part, by a purpose to serve the master. RESTATEMENT (SECOND) OF AGENCY § 228 (1958).

The plaintiffs' original writ asserted claims against both Hubbard in her individual capacity and the town. In response to the superior court's holding that the writ contained no facts supporting a finding that Hubbard acted in an individual capacity, the plaintiffs amended their writ to allege the following additional facts:

> 11. The Defendant Hubbard was not asked to speak on this specific topic by anyone on the Board of Selectmen or by any other Town employee.
>
> 12. The subject upon which the Defendant Hubbard spoke was not on the posted agenda and was not the subject of discussion at the time that she made her statements.
>
> . . . .
>
> 15. The Defendant Hubbard, in her capacity as Town Clerk/Tax Collector does not give monthly "reports" to the Board of Selectmen. The Defendant Hubbard made no prior request of the Board asking for time to bring up the matter upon which she spoke, or to have it placed on the agenda.
>
> 16. The Defendant Hubbard reported in her hand-written notes that she made her statements "during public comments at the Selectmen's meeting."

■ The town argues that if the plaintiffs were to prove the above-quoted allegations, they would prove that Hubbard was not acting within the scope of her employment as Town Clerk. We agree with the town that the allegations, if proven, might support a conclusion that Hubbard was acting outside the scope of her employment. *See Daigle*, 129 N.H. at 579; RESTATEMENT (SECOND) OF AGENCY §§ 228, 229 (1958). However, assuming as true the facts the plaintiffs have alleged in the original writ, a reasonable factfinder could conclude that Hubbard was acting "within the course and scope of her duties as clerk of the Town of Effingham" when she made the allegedly defamatory statements. Therefore, dismissal of the claim against the town on the grounds that Hubbard did not act within the scope of her employment would have been inappropriate.

We turn to the plaintiffs' contention that the trial court erred in granting summary judgment to Hubbard. In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *See Del Norte, Inc.*, 142 N.H. at 537. "If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment." *Id.* (quotation and brackets omitted). We review the trial court's application of the law to the facts *de novo. See id.*

After the trial court dismissed the claim against the town on the grounds of absolute immunity, Hubbard moved for summary judgment. She argued that because she had acted in an official capacity when she made the allegedly defamatory statements, she, like the town, was entitled to absolute immunity. The trial court granted the motion, stating, in pertinent part:

> The undisputed material facts establish that Ms. Hubbard acted in her official capacity as the Town Clerk when she informed the selectmen at the August 26, 1999, meeting of the circumstances surrounding the sale of the cemetery plots. . . .
>
> According to the Supreme Court's decision in *Voelbel v. Town of Bridgewater* . . . Summary Judgment must be granted.

■ We conclude from the order that the trial court granted Hubbard's motion for summary judgment for the same reason that it granted the town's motion to dismiss. The court's reference to *Voelbel* suggests that the order rests on the erroneous legal conclusion that the allegedly defamatory statements in this case are absolutely privileged.

Because the statements are not absolutely privileged, we conclude that the trial court erred in granting Hubbard's motion for summary judgment.

*Reversed and remanded.*

BRODERICK, J., sat for oral argument but did not take part in the final vote; DALIANIS and DUGGAN, JJ., concurred.