# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
April 17, 2013 Session

## BASSAM ISSA v. JACK BENSON, SR.

### Appeal from the Circuit Court for Hamilton County
### No. 12C283    L. Marie Williams, Judge

### No. E2012-01672-COA-R3-CV-FILED-JUNE 24, 2013

This appeal concerns alleged defamation and the applicability of both the legislative privilege and the litigation privilege.  Bassam Issa ("Issa"), a developer seeking rezoning of certain real property, sued Chattanooga City Councilman Jack Benson, Sr. ("Benson") in the Circuit Court for Hamilton County ("the Trial Court").  Issa alleged that, in two separate incidents, Benson had defamed him by accusing him of offering a bribe to influence Benson's vote on the rezoning matter.  Benson filed a motion for judgment on the pleadings, arguing that his statements were protected by the legislative privilege and the litigation privilege.  The Trial Court granted Benson's motion.  Issa appeals.  We affirm the judgment of the Trial Court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and THOMAS R. FRIERSON, II, J., joined.

John R. Anderson and Joseph W. Dickson, Chattanooga, Tennessee, for the appellant, Bassam Issa.

Travis R. McDonough, Zachary H. Greene, and, Jack Benson, Jr., Chattanooga, Tennessee, for the appellee, Jack Benson, Sr.

Phillip A. Noblett and Patrick P.H. Bobo, Chattanooga, Tennessee, for Amicus Curiae, City of Chattanooga, in support of appellee, Jack Benson, Sr.

# OPINION

## Background

In September 2011, Issa, a commercial real estate developer and the sole shareholder of the commercial development company, ANT Group, LLC , sought to develop an IHOP restaurant in Chattanooga. In order to develop the restaurant, the relevant real property needed to be rezoned. Issa had meetings with Benson concerning this matter. Benson represented in the Chattanooga City Council the area in which the property is located.

In the course of their discussions, Issa informed Benson that, at the closing of the sale of the property to IHOP, he would make a donation to charity. Benson was not amenable to Issa's rezoning request. At a meeting at Glen Gene Deli, Issa told Benson that ANT would file a lawsuit against Chattanooga and the City Council should Benson try to garner opposition to the rezoning. Benson, in turn, stated that, should the matter come to a lawsuit, he would allege that Issa had attempted to bribe him to secure his support for the rezoning. Benson later repeated this allegation of bribery to members of the Chattanooga City Council prior to the City Council's vote on Issa's request to rezone the property. The City Council ultimately denied the rezoning.

In February 2012, Issa sued Benson for defamation. We reproduce the critical allegations of Issa's complaint:

14. Also, Issa, along with his architect Pat Neuhoff ("Neuhoff"), met with Defendant Benson before September 15, 2011, to discuss the material blueprints of the IHOP, which included, among other things, installing significant landscaping as a buffer for the neighborhood and a restriction on the maximum square footage of the restaurant.
15. During his conversation with Defendant Benson, and in the presence of Neuhoff, Issa stated that he intended to donate $25,000.00 to another charity identified as "Friends of East Brainerd" to go towards the building of a library or any other community project, at the closing sale of the Property to the IHOP.
16. Defendant Benson stated that neither he nor the Chattanooga City Council had ever voted against the current zoning policy that was adopted in the Hamilton Place Community Land Use Plan in 2001 (the "2001 Plan") and that he did not intend to vote against the 2001 Plan to permit ANT Group to develop the IHOP.

17. At a subsequent meeting between Defendant Benson and Issa at Glen Gene Deli in October, 2011, Issa presented eight cases revealing that the City had deviated from the 2001 Plan by rezoning properties in contradiction to the 2001 Plan. Defendant Benson reacted very angrily, and vowed to make sure that the Chattanooga-Hamilton County Regional Planning Agency ("Staff"), the Chattanooga-Hamilton County Planning Commission ("Commission"), and the City Council denied the rezoning request.

18. Issa advised Benson that if Benson intended to garner opposition from other local officials, then ANT Group would be forced to file a lawsuit against the City of Chattanooga and the City Council. Benson immediately asserted within listening distance of other patrons at Glen Gene Deli that if Issa "goes to court," he (Benson) would accuse Issa of bribery in an attempt to obtain support for the request to rezone.

\*\*\*

24. On December 20, 2011, the City Council denied ANT Group's request to rezone the Property in a vote of 5-3, with the following individuals voting to deny: Councilwoman Sally Robinson, Councilman Jack Benson, Councilman Russell Gilbert, Councilman Manny Rico and Chairwoman Pam Ladd.

25. Subsequent to the City Council meeting on December 20, 2011, Issa was informed, and thereon believes and alleges, that Benson, in an effort to obtain the necessary denial votes from the Council, had slandered Issa by specifically telling one or more members of the City Council that Issa attempted to bribe Benson with $2,500.00 cash in return for Benson's affirmative vote.

26. In addition to the members of the City Council, Issa is informed and believes and thereon alleges that Benson's statements were heard by several other persons whose names are not presently known to him.

27. The oral statements spoken by Benson were understood by those who saw and heard it to mean that Issa attempted to bribe an elected official in exchange for an affirmative vote.

28. Furthermore, Benson's slanderous statements are defamatory because the intended representation carries a meaning that Issa's conduct was criminal.

29. Benson's statements were slanderous because they are predisposed to, and indeed did, injure Issa in his profession, trade and business by imputing to him a general disqualification in those respects that the occupation and duties as a commercial developer require and something that has a natural tendency to decrease the profits of Issa's occupation.

Benson filed his answer in March 2012. In April 2012, Benson filed a motion for judgment on the pleadings, arguing that his statements were protected by the legislative privilege and the litigation privilege. The motion was heard before the Trial Court in June 2012. In July 2012, the Trial Court entered an order granting Benson's motion. The Trial Court stated in its order, in part:

> In summary, any of the statements Plaintiff alleges Defendant made to other City Council members were directly related to matters within the scope of the City Council's authority, were made within the context of proposed litigation, and are protected by the legislative privilege, litigation privilege, or both. Similarly, any statements made by Defendant at Glen Gene Deli were in direct response to Plaintiff's statement that he was going to file a lawsuit if the rezoning request was denied and are protected by the litigation privilege. Because the Court finds that each of the allegedly defamatory statements made by Defendant were protected by absolute privilege, it must grant Defendant's motion.

Issa timely appealed to this Court.

## Discussion

Though not stated exactly as such, Issa raises two issues on appeal: 1) whether the Trial Court erred in holding that Benson's statements to fellow council members regarding Issa's alleged effort to bribe him were protected by the legislative privilege; and, 2) whether the Trial Court erred in holding that Benson's statements at Glen Gene Deli regarding Issa's alleged bribe were protected by the litigation privilege.

This case was disposed of by judgment on the pleadings. Our Supreme Court has discussed the standard of review for judgment on the pleadings:

> The legal sufficiency of a complaint can be tested by a Tennessee Rule of Civil Procedure 12.03 motion for judgment on the pleadings or a Tennessee Rule of Civil Procedure 12.02(6) motion for failure to state a claim upon which relief can be granted. The motions, being essentially the same, are reviewed under the same standards.
>
> In determining the sufficiency of a complaint, we must construe it in the plaintiff's favor, "by taking all factual allegations in the complaint as true and by giving the plaintiff the benefit of all the inferences that can be reasonably drawn from the pleaded facts." *Satterfield v. Breeding Insulation Co.,* 266

-4-

S.W.3d 347, 352 n. 1 (Tenn. 2008) (citing *Lanier v. Rains*, 229 S.W.3d 656, 660 (Tenn.2007)). "A trial court should grant a motion to dismiss 'only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.' " *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) (quoting *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002)). The determination of whether the facts, as set forth in the complaint, constitute a cause of action presents a question of law, and, accordingly, our review is de novo with no presumption of correctness.

*Harman v. Univ. of Tenn.*, 353 S.W.3d 734, 736-37 (Tenn. 2011) (footnotes and some citations omitted).

We first address whether the Trial Court erred in holding that Benson's statements to fellow council members regarding Issa's alleged effort to bribe him were protected by the legislative privilege. Legislative privilege refers to the protection afforded to members of legislative bodies for allegedly defamatory statements made in the course of their legislative functions. A significant case regarding legislative privilege in Tennessee is *Cornett v. Fetzer*, 604 S.W.2d 62 (Tenn. Ct. App. 1980). The *Cornett* court observed that Article 1, Section 6, of the United States Constitution conferred the concept of absolute privilege upon members of Congress regarding defamatory statements made while in their legislative function, and that the Tennessee Constitution also embodied this concept of absolute privilege.[1] *Id*. at 63. In *Cornett*, an Elizabethton city council member made allegedly defamatory remarks during a regularly scheduled city council meeting concerning the workmanship of a contractor who did work on the roof of the Elizabethton high school. *Id*. at 62.

The *Cornett* court held that the absolute privilege extended to subordinate legislative bodies like city councils and that the privilege applied to the council member in these circumstances, stating:

Such lesser legislative entities make important social and economic decisions that many times affect our lives to a greater degree than do decisions

---

[1] Tenn. Const. Art. 2, § 13 provides: "Senators and Representatives shall, in all cases, except treason, felony, or breach of the peace, be privileged from arrest during the session of the General Assembly, and in going to and returning from the same; and for any speech or debate in either House, they shall not be questioned in any other place."

made by our state legislators and congressmen. If the utterances of members of the legislative bodies such as city councils are not cloaked with an absolute privilege, an unwarranted consideration-personal monetary liability-will be interjected into a councilman's decision making process. This, we feel, would have the unavoidable effect of inhibiting the independent and forceful debate out of which decisions which best serve the interests of the populace are borne.

\*\*\*

The absolute privilege which we hold applicable in the case at bar does not give a member of a subordinate legislative body the right to use his or her position as a forum for private slanders against others. Since one reason behind granting a privilege such as we have granted today is to insure an uninhibited debate concerning matters before a legislative body, it follows that such a privilege is applicable only if the defamatory remarks are made relating to matters within the scope of that body's authority. In the case at bar, appellee's remarks were certainly within council's legitimate legislative sphere as they were made with reference to the proposed budget of the school board, a budget which had to be approved or disapproved by city council.

It is not the purpose of this Court to license malicious defamers. However, we feel the policy choice we make today is the correct one.

*Cornett*, 604 S.W.2d at 63-64.

The Supreme Court of New Hampshire has noted: "The trend of judicial decisions and legal thought is to extend the absolute privilege to communications of members of lesser legislative bodies." *Pierson v. Hubbard*, 147 N.H. 760, 764, 802 A.2d 1162, 1166 (2002) (quoting *Noble v. Ternyik,* 273 Or. 39, 539 P.2d 658, 660 (1975)). The Supreme Court of Arizona discussed the rationale for extending the privilege to subordinate legislatures, stating: "The stated rationale supporting absolute immunity for council members varies but frequently includes attracting qualified council members, council members' need for candor, and the chilling effect accompanying a qualified privilege." *Sanchez v. Coxon*, 175 Ariz. 93, 96, 854 P.2d 126, 129 (1993). We are persuaded that an absolute legislative privilege applies to city council members, such as Benson, acting in their legislative functions.

Issa argues that Benson's statements are not protected by the legislative privilege because, in part, they were not made during a regularly-scheduled, open meeting of the Chattanooga City Council. Issa points out that in *Cornett*, the allegedly defamatory

remarks were made during a regularly-scheduled, open city council meeting. We, however, do not believe this is a decisive distinction. Whether in this case, for example, there was a violation of the Tennessee Open Meetings Act, codified at Tenn. Code Ann. § 8-44-101 *et seq.*, is not the relevant issue before us on appeal. We note that *Cornett*, decided in 1980, made no distinction concerning the relevance of the open meetings law, which was passed in 1974. This is not an open meetings case. Rather, our inquiry centers on the nature and scope of the statements at issue vis-a-vis Benson's legislative functions. Issa argues essentially that Benson's remarks were gratuitous, and beyond the scope of a legitimate legislative function. Additionally, Issa argues that bribery is not, per se, part of the legislative function in regards to rezoning issues.

Issa's arguments are unavailing. Issa takes what we believe to be an unwarranted and extremely narrow view of what constitutes legislative function. The same policy reasons as discussed in *Cornett* and the other cases discussed in this Opinion for applying the legislative privilege to a legislative body such as the Chattanooga City Council are just as applicable to Benson's statements to his fellow council members as it would have been if he had made the same statement to those same council members in a regular scheduled open meeting of the Chattanooga City Council. While bribery of a public official is, of course, illegal and thus never officially part of a city council's legislative agenda, a city council may well have a legitimate basis for knowing whether individuals seeking certain actions from the council have attempted to secure support by illegal means. Whether an individual attempts to bribe a council member in order to influence a vote surely is relevant information for the council to consider in weighing that vote. While we take no position on the truth of Benson's allegations, we do hold that they are of a legislative character under the allegations of Issa's complaint. Having decided that, we do not probe into Benson's motivations. We hold that Benson's allegations fell within the scope of his legislative function and are protected by the legislative privilege. We affirm the Trial Court as to this issue.

We next address whether the Trial Court erred in holding that Benson's statements regarding Issa's alleged bribe at Glen Gene Deli were protected by the litigation privilege. We previously have discussed the litigation privilege:

> This state further recognizes that "statements made in the course of judicial proceedings which are relevant and pertinent to the issues are absolutely privileged and therefore cannot be used as a basis for a libel action for damages." *Jones v. Trice*, 360 S.W.2d 48, 50 (Tenn. 1962); *see also Myers v. Pickering Firm, Inc.*, 959 S.W.2d 152, 159 (Tenn. Ct. App. 1997). This is true even if the statements are "known to be false or even malicious." *Jones*, 360

S.W.2d at 50 (citing *Hayslip v. Wellford*, 263 S.W.2d 136 (Tenn. 1953)). The policy underlying this rule is

> that access to the judicial process, freedom to institute an action, or defend, or participate therein without fear of the burden of being sued for defamation is so vital and necessary to the integrity of our judicial system that it must be made paramount to the right of an individual to a legal remedy where he [or she] has been wronged thereby.

*Jones*, 360 S.W.2d at 51. *Myers* also expressly stands for the proposition that "communications preliminary to proposed or pending litigation" are absolutely privileged. *Myers*, 959 S.W. at 161 (quoting Restatement of Torts § 587).

*Phillips v. Woods*, No. E2007-00697-COA-R3-CV, 2008 WL 836161, at **7-8 (Tenn. Ct. App. March 31, 2008), *no appl. perm. appeal filed*.

To review the pertinent allegations in the complaint:

18. Issa advised Benson that if Benson intended to garner opposition from other local officials, then ANT Group would be forced to file a lawsuit against the City of Chattanooga and the City Council. Benson immediately asserted within listening distance of other patrons at Glen Gene Deli that if Issa "goes to court," he (Benson) would accuse Issa of bribery in an attempt to obtain support for the request to rezone.

Benson's statement was in response to a warning that ANT Group, LLC, of which Issa was sole shareholder, potentially would sue the City of Chattanooga and the City Council, of which Benson was a member. "Issa advised Benson that if Benson intended to garner opposition from other local officials, then ANT Group *would be forced to file a lawsuit* against the City of Chattanooga and the City Council." (Emphasis added). This allegation was a clear warning by Issa to Benson that a lawsuit *would* be filed should Benson garner opposition to the rezoning. Benson's statement was a communication preliminary to proposed litigation, and as such fell within the litigation privilege.

Communicating while being a legislator does not by itself shield one from defamation claims. However, certain communications made within legislative functions are accorded absolute privilege. Similarly, certain communications made with respect to litigation, including proposed litigation, also enjoy absolute privilege. These privileges exist on the basis of strong public policy reasons. We take no position on the truth of Benson's

allegations, either those voiced at the deli or to the city council members.  None of the allegations in Issa's complaint, if true, could sustain the cause of defamation because of the applicable privileges.  The judgment of the Trial Court is affirmed in its entirety.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below.  The costs on appeal are assessed against the Appellant, Bassam Issa, and his surety, if any.

_____
D. MICHAEL SWINEY, JUDGE