ELMORE, Judge.
 

 *507
 
 Lena Watts-Robinson appeals from an order dismissing her defamation action against Brandon Shelton, opposing counsel in an employment discrimination case (the "
 
 Billips
 
 action"). In her complaint, Watts-Robinson alleged that Shelton defamed her while testifying before the Disciplinary Hearing Commission of the North Carolina State Bar ("DHC") during a hearing investigating allegations that Watts-Robinson,
 
 inter alia
 
 , mismanaged entrusted client funds and engaged
 
 *508
 
 in professional misconduct while representing the plaintiff-employee in the
 
 Billips
 
 action. Shelton moved to dismiss Watts-Robinson's defamation action for failure to state a claim on the basis that his testimony during the disciplinary hearing was absolutely privileged, since it was made in the course of a judicial proceeding and was sufficiently relevant to that proceeding. After a dismissal hearing, the superior court granted Shelton's motion and dismissed Watts-Robinson's defamation action.
 

 Two issues are presented in this appeal: whether Shelton's allegedly defamatory statements made during the disciplinary hearing before the DHC were absolutely privileged from civil action, and whether the trial court erred by refusing to exclude the resulting discipline order disbarring Watts-Robinson from practicing law ("disbarment order") on the basis that its prejudice outweighed its probative value. We hold Shelton's challenged statement was absolutely privileged and the superior court properly refused to exclude the disbarment order. Accordingly, we affirm.
 

 I. Background
 

 Watts-Robinson was disbarred from the practice of law on 2 December 2014. According to the disbarment order, Watts-Robinson deposited entrusted client funds into a bank account that accrued interest and paid herself the earned interest, rather than disbursing it to her clients or to the North Carolina Interest on Lawyers Trust Account Program ("IOLTA") as required by law. Additionally, Watts-Robinson engaged in other egregious acts of professional misconduct while representing at least two of her clients, Billips and N. Burton, including,
 
 inter alia
 
 , mismanaging entrusted funds by merging client funds with her own, failing to promptly notify Billips when she received his settlement proceeds, failing to respond to Billips' request for his settlement proceeds, and using entrusted client funds for her own personal benefit by reimbursing herself from Billips' settlement proceeds for court sanctions imposed against her personally.
 

 During Watts-Robinson's disciplinary hearing, Shelton was called to testify about his dealings with her as to the settlement proceeds from the
 
 Billips
 
 action. Specifically, Shelton was questioned about Watts-Robinson's objection to a $96,011.92 settlement check made payable directly to Billips. Shelton explained that Watts-Robinson notified him that Shelton's client needed to reissue the check because Billips owed Watts-Robinson expenses and she was concerned that he would not reimburse her. When counsel for the State Bar asked Shelton to expand on his stated concern about Watts-Robinson's request that the check
 
 *509
 
 made payable to Billips be reissued made payable in a manner she could deposit into her own bank account, Shelton responded: "My concern was that Ms. Watts-Robinson was potentially trying to run some kind of scam on Mr. Billips and I did not want my client to be in the middle of a dispute with Mr. Billips and Ms. Watts-Robinson." After the disciplinary hearing, on 4 December 2014 the DHC entered an order of discipline, the disbarment order, disbarring Watts-Robinson from practicing law.
 

 On 10 November 2015, Watts-Robinson filed an action against Shelton, alleging,
 
 inter alia
 
 , that his "scam" claim defamed her and
 
 *54
 
 caused her emotional distress. Shelton moved to dismiss the action for failure to state a claim under Rule 12(b)(6), attaching the disbarment order to his motion, and arguing that his statement was absolutely privileged because it was made during the course of a judicial proceeding and was sufficiently relevant to its subject matter.
 

 On 7 January 2016, the trial court heard Shelton's motion to dismiss. During the dismissal hearing, Watts-Robinson objected to the trial court considering the disbarment order because it was more prejudicial than probative. The trial court never ruled on her motion, but did consider the disbarment order in reaching its decision effectively refusing to exclude it. On 11 January 2016, the trial court entered an order dismissing Watts-Robinson's defamation action. Watts-Robinson appeals.
 

 II. Analysis
 

 A. Rule 12(b)(6) Dismissal was Proper
 

 Watts-Robinson contends the trial court erred by granting Shelton's Rule 12(b)(6) dismissal because it applied the improper "palpably irrelevant" standard, not the proper "sufficiently relevant" standard, when determining whether Shelton's statements were absolutely privileged under North Carolina's defamation law. Watts-Robinson further contends that Shelton's statement was not "sufficiently relevant" to the proceeding and, therefore, should not be absolutely privileged. Shelton retorts that Watts-Robinson's assertion there exist two relevance standards is merely two sides of the same coin, and, no matter the flip, his statement made during the disciplinary hearing lands on the side of absolute privilege against a civil action. We agree with Shelton.
 

 We review
 
 de novo
 
 a trial court's ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6).
 
 Jackson v. Charlotte Mecklenburg Hosp. Auth.
 
 ,
 
 238 N.C.App. 351
 
 , 352,
 
 768 S.E.2d 23
 
 , 24 (2014) (citation omitted). A Rule 12(b)(6) dismissal is proper when
 

 *510
 
 (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.
 

 Izydore v. Tokuta
 
 , --- N.C.App. ----, ----,
 
 775 S.E.2d 341
 
 , 345 (citation omitted),
 
 disc. review denied
 
 ,
 
 368 N.C. 430
 
 ,
 
 778 S.E.2d 92
 
 (2015).
 

 "[A] defamatory statement made in due course of a judicial proceeding is absolutely privileged and will not support a civil action for defamation, even though it be made with express malice,"
 
 Jarman v. Offutt
 
 ,
 
 239 N.C. 468
 
 , 472,
 
 80 S.E.2d 248
 
 , 251 (1954) (citations omitted), unless the statement is "so palpably irrelevant to the subject matter of the controversy that no reasonable man can doubt its irrelevancy or impropriety,"
 
 Harman v. Belk
 
 ,
 
 165 N.C.App. 819
 
 , 825,
 
 600 S.E.2d 43
 
 , 48 (2004) (citation and quotation marks omitted). "In deciding whether a statement is absolutely privileged, a court must determine (1) whether the statement was made in the course of a judicial proceeding; and (2) whether it was sufficiently relevant to that proceeding."
 
 Id.
 
 at 824,
 
 600 S.E.2d at
 
 47 (citing
 
 Harris v. NCNB Nat'l Bank of N.C.,
 

 85 N.C.App. 669
 
 , 672,
 
 355 S.E.2d 838
 
 , 841 (1987) ). Because Watts-Robinson concedes Shelton's challenged statement was made during the course of a judicial proceeding, our review is limited to its relevancy.
 

 During the disciplinary hearing, counsel for the State Bar and Shelton engaged in the following exchange:
 

 Q Would you tell the [DHC] panel basically about the substance of [Watts-Robinson's] communications with you after receiving the settlement checks [in the
 
 Billips
 
 action]?
 

 A Yes, ma'am. Ms. Watts-Robinson was upset or she disputed the manner in which the payments were made. The check to her was fine, but the check that was made payable to Mr. Billips she said was not satisfactory. She was-first of all she was upset that we did not deposit them. I explained why we didn't deposit them, why we sent them, and she indicated that the check to Mr. Billips was incorrect. It should have been made payable to her or
 
 *55
 
 Mr. Billips or deposited directly into her account.
 

 ....
 

 *511
 
 Q And once you sent her the check again, did she deposit it into her account?
 

 A She deposited the check that was made payable to her. She did not deposit the check that was made payable to Mr. Billips.
 

 Q Did she send it back to you a second time?
 

 A She did.
 

 Q And how did you respond at that point?
 

 A I believe we had a phone conversation to discuss what the underlying problem was in terms of the way the payments were issued.
 

 Q What's your understanding or what did Ms. Watts-Robinson state about the reason why there was an issue with the check made payable to Mr. Billips?
 

 A She state [sic] that Mr. Billips owed her expenses out of the payments that were made to him and her concern was ... that he would cash his check and not reimburse her the expenses that are owed to her.
 

 Q At that point, did you then have the checks reissued as she was requesting?
 

 A Not immediately, no.
 

 Q What did you do after learning what Ms. Watts-Robinson described as the issue with the check?
 

 A There were concerns on my part in terms of making-changing the check in the way that Ms. Watts-Robinson wanted, so we ultimately ended up drafting an addendum to the original settlement agreement to clearly kind of delineate and outline the reasons for and how the checks to Mr. Billips were ultimately going to be paid.
 

 Q
 
 What were your concerns?
 

 A
 
 My concern was that Ms. Watts-Robinson was potentially trying to run some kind of scam on Mr. Billips
 
 and I did not want my client to be in the middle of a dispute with Mr. Billips and Ms. Watts-Robinson.
 

 *512
 
 Q I note that in her letter, Plaintiff's Exhibit 26, she gives two options for payment "Law Office of Lena Watts-Robinson or Louis Billips"; and then in the alternative reissuing the check "Law Office of Lena Watts-Robinson on behalf of Louis Billips." Did you choose to reissue the check in accord with either of these suggested options?
 

 A I believe after the addendum was signed off on by both parties, including Mr. Billips, that we ended up issuing the check to Ms. Watts-Robinson on behalf of Mr. Billips.
 

 (Emphasis added.)
 

 Watts-Robinson argues that since the disciplinary hearing was not focused on any alleged scam she ran, Shelton's "scam" claim was not "sufficiently relevant to the proceeding" but was "palpably irrelevant to [its] subject matter."
 

 To the contrary, central to the subject matter of Watts-Robinson's disciplinary hearing was her alleged mismanagement of entrusted client funds, including the settlement proceeds from the
 
 Billips
 
 action. Considering the entire exchange in context, Shelton's response to questioning that he was concerned "Watts-Robinson was potentially trying to run some kind of scam on Mr. Billips" after she requested the settlement check be reissued in a manner that would permit her to deposit the check into her own bank account, because she was concerned Billips would not reimburse her for some expense, was sufficiently relevant such that it was not palpably irrelevant to the subject matter of the disciplinary proceeding.
 

 Accordingly, Shelton's testimony during the disciplinary hearing was absolutely privileged, and the trial court properly granted his motion to dismiss under Rule 12(b)(6) for failure to state a claim.
 

 B. No Error Under Rule 403's "Unfair Prejudice" Balance
 

 Watts-Robinson next contends the trial court erred by admitting over objection the disbarment order in violation of Rule 403 of the North Carolina Rules of Evidence. We disagree.
 

 *56
 
 During the dismissal hearing, Watts-Robinson moved to exclude the disbarment order on the basis that it was more prejudicial than probative. Although the trial court never explicitly ruled on her motion,
 
 see
 
 N.C. R. App. P. 10(a)(1) (2016) ("It is ... necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion."), it refused to exclude the disbarment order and considered it in reaching its decision to grant Shelton's motion to dismiss.
 

 *513
 
 We apply an abuse-of-discretion standard when reviewing a trial court's Rule 403 decision.
 
 Wolgin v. Wolgin
 
 ,
 
 217 N.C.App. 278
 
 , 283,
 
 719 S.E.2d 196
 
 , 200 (2011). "An abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision."
 
 State v. Ward
 
 ,
 
 364 N.C. 133
 
 , 139-40,
 
 694 S.E.2d 738
 
 , 742 (2010) (citations, quotation marks, and brackets omitted).
 

 Under Rule 403, a trial court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice...." N.C. Gen. Stat. § 8C-1, Rule 403 (2015). " 'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, as an emotional one."
 

 Id.
 

 § 8C-1, Rule 403 official cmt.
 

 However, excluding evidence under Rule 403 's weighing of probative value against prejudice has no logical application to bench trials, such as this dismissal hearing, since we presume trial judges can consider relevant evidence, weigh its probative value, and reject improper inferences in reaching a decision.
 
 See, e.g.
 
 ,
 
 In re J.B.,
 

 172 N.C.App. 1
 
 , 16,
 
 616 S.E.2d 264
 
 , 273 (2005) ("[T]he trial court in a bench trial 'is presumed to have disregarded any incompetent evidence.' " (citation omitted));
 
 see also
 

 In re Oghenekevebe
 
 ,
 
 123 N.C.App. 434
 
 , 438,
 
 473 S.E.2d 393
 
 , 397 (1996) ("In a nonjury trial, if incompetent evidence is admitted and there is no showing that the judge acted on it, the trial court is presumed to have disregarded it." (citation omitted)). Indeed, here the trial court explained: "The Court is not using the order to determine whether or not you had wrong doings. The Court is simply trying to determine the relevance of the testimony of the person that appeared before the State Bar."
 

 Nonetheless, the disbarment order's probative value was not substantially outweighed by unfair prejudice. The disbarment order was relevant to whether Shelton's testimony during the disciplinary hearing was absolutely privileged. It showed that Watts-Robinson was disciplined, in large part, for misconduct arising from her representation of Billips (57 of the DHC's 105 factual findings) and, specifically, for mismanaging Billips's settlement proceeds. Although the disbarment order was prejudicial, Watts-Robinson has not demonstrated that the trial court was improperly biased by it in reaching its decision. Contrarily, the trial transcript positively demonstrates otherwise. Accordingly, we hold that the trial court did not violate Rule 403 by refusing to exclude the disbarment order.
 
 See
 

 N. Carolina State Bar v. Adams
 
 ,
 
 239 N.C.App. 489
 
 , 495,
 
 769 S.E.2d 406
 
 , 411 (2015) (holding that the DHC did not violate
 
 *514
 
 Rule 403 in admitting evidence when the defendant had not demonstrated an improper basis on which DHC may have considered it).
 

 III. Conclusion
 

 Shelton's response to the request by counsel for the State Bar to expand on his concern about reissuing the settlement check was absolutely privileged. Thus, the trial court properly dismissed Watts-Robinson's defamation action under Rule 12(b)(6). The trial court also did not violate Rule 403 by refusing to exclude the disbarment order during this nonjury dismissal hearing. Accordingly, we affirm.
 

 AFFIRMED.
 

 Judges STEPHENS and DIETZ concur.