IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-618

Filed: 17 March 2020

Mecklenburg County, No. 18 CVS 10730

RICHARD TOPPING, Plaintiff,

v.

KURT MEYERS AND MCGUIREWOODS, LLP, Defendants.

Appeal by defendants from order entered 18 March 2019 by Judge Joseph N. Crosswhite in Mecklenburg County Superior Court. Heard in the Court of Appeals 5 February 2020.

> *Rudolf Widenhouse, by David S. Rudolf, Joseph P. Lattimore, and Sonya Pfeiffer, for plaintiff-appellee.*
>
> *Mullins Duncan Harrell & Russell PLLC, by Allison O. Mullins and Alan W. Duncan, for defendant-appellants.*

TYSON, Judge.

Kurt Meyers and McGuireWoods, LLP ("Defendants") appeal from an order entered 18 March 2019 denying their motion to dismiss Richard Topping's ("Plaintiff") claims against them. We dismiss Defendant's interlocutory appeal and remand.

I. Background

Defendants' client, Cardinal Innovations Healthcare Solutions ("Cardinal") is a Local Management Entity/Managed Care Organization under the Mental Health,

Developmental Disabilities, and Substance Abuse Act of 1985. N.C. Gen. Stat. § 122C-1 (2019).  Cardinal is an "area authority," which is "a local political subdivision of the State." N.C. Gen. Stat. §§ 122C-3(1), 122C-116(a) (2019).

Plaintiff became the Chief Executive Officer ("CEO") of Cardinal 1 July 2015. Following receipt and review of a North Carolina State Auditor's performance audit in May 2017, the Secretary of the North Carolina Department of Health and Human Services ("DHHS") initiated an investigation into Cardinal's activities.

The subsequent investigatory report "sharply criticized" the severance provisions of Plaintiff's employment contract and several other Cardinal executives, and also Plaintiff's compensation and potential bonus opportunities under his contract. Plaintiff and three other executives resigned from Cardinal in November 2017, after the audit and DHHS report.  Plaintiff was paid two years' severance, allegedly worth $1.7 million.  DHHS officials took over Cardinal's operations and fired its board members.  The new board ("the Board") hired Defendants in January 2018 to conduct an independent internal investigation of Plaintiff's conduct relating to the drafting and approval of the severance agreements, and the November 2017 severance payments made to himself and three other former Cardinal executives, who had also resigned.

Defendant Meyers presented the findings of the investigation to the Board on 23 March 2018.  The Board voted to file a lawsuit against Plaintiff, seeking the return

of the November 2017 two year's severance payment based upon his alleged misconduct. The Board also authorized a press conference to be held after filing the suit, wherein Defendant Meyers would present the findings and allegations in the complaint to the media.

Cardinal filed suit against Plaintiff at 9:00 a.m. on 26 March 2018. A press conference began at 10:30 a.m., during which Defendant Meyers gave his presentation to the assembled representatives of the media.

Plaintiff filed suit against Defendants on 30 May 2018, alleging libel *per se*, slander *per se*, negligent infliction of emotional distress, negligence, and punitive damages. Defendants moved to dismiss Plaintiff's complaint for failure to state a claim upon which relief could be granted, pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2019). Defendants asserted, *inter alia*, Plaintiff's claims are barred by absolute privilege and Plaintiff had improperly recast and re-asserted his defamation claims as negligence claims.

The trial court struck four paragraphs of Plaintiff's complaint for impermissible reliance upon the North Carolina Rules of Professional Conduct to allege a legal duty and standard of care for the negligence claims. The trial court otherwise denied Defendants' motion. Defendants timely filed notice of appeal.

## II. Interlocutory Jurisdiction

Defendants argue this Court possesses jurisdiction over this interlocutory appeal pursuant to N.C. Gen. Stat. §§ 1-277(a) and 7A-27(b)(3) (2019).

> Ordinarily, an appeal from an interlocutory order will be dismissed as fragmentary and premature unless the order affects some substantial right and will work injury to appellant if not corrected before appeal from final judgment. . . . Essentially a two-part test has developed[:] the right itself must be substantial and the deprivation of that substantial right must potentially work injury to plaintiff if not corrected before appeal from final judgment.

*Goldston v. American Motors Corp.*, 326 N.C. 723, 726, 392 S.E.2d 735, 736 (1990)

(citations and internal quotation marks omitted).

> Admittedly the "substantial right" test for appealability of interlocutory orders is more easily stated than applied. It is usually necessary to resolve the question in each case by considering the particular facts of that case and the procedural context in which the order from which appeal is sought was entered.

*Waters v. Personnel, Inc.*, 294 N.C. 200, 208, 240 S.E.2d 338, 343 (1978).

On a purported appeal from an interlocutory order without the trial court's Rule 54(b) certification, "the appellant has the burden of showing this Court that the order deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits." *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 380, 444 S.E.2d 252, 254 (1994) (citations omitted).

Defendants assert the trial court's order deprived them of substantial rights in two ways: (1) the trial court's failure to dismiss Plaintiff's defamation claims for absolute privilege; and, (2) the trial court's failure to dismiss Plaintiff's negligence

claims attacking speech as duplicative of his defamation claims. We address each in turn. Alternatively, Defendants have concurrently filed a petition for a writ of certiorari with this Court.

## A. Absolute Privilege

Defendants analogize their claim of absolute privilege to sovereign immunity or public official immunity to assert the trial court's denials of their motion to dismiss are immediately appealable. *See, e.g.*, *Green v. Kearney*, 203 N.C. App. 260, 266, 690 S.E.2d 755, 761 (2010) (citations omitted) (the "denial of a Rule 12(b)(6) motion to dismiss on the basis of sovereign immunity affects a substantial right and is immediately appealable"); *Summey v. Barker*, 142 N.C. App. 688, 689, 544 S.E.2d 262, 264 (2001) (citation omitted) ("Orders denying dispositive motions based on public official's immunity affect a substantial right and are immediately appealable.").

> The rationale for the exception to the general rule [denying interlocutory appeals] stems from the nature of the immunity defense. A valid claim of immunity is more than a defense in a lawsuit; it is in essence immunity from suit. Were the case to be erroneously permitted to proceed to trial, immunity would be effectively lost.

*Clark v. Red Bird Cab Co.*, 114 N.C. App. 400, 403, 442 S.E.2d 75, 77 (1994) (citations and internal quotation marks omitted).

If an absolute bar to suit extends and applies to Defendants' actions, the trial court's failure to dismiss Plaintiff's claims deprives Defendants of immunity from

suit. If applicable, this denial of immunity from suit, as asserted in Defendants' motion, is a substantial right for Defendants, which would be lost, absent interlocutory review. *See Jeffreys*, 115 N.C. App. at 380, 444 S.E.2d at 254. In "considering the particular facts . . . and the procedural context" of this case, we conduct a full analysis of the issue of absolute immunity from suit below, to determine whether Defendants have asserted a "substantial right" in this interlocutory appeal. *See Waters*, 294 N.C. at 208, 240 S.E.2d at 343.

### B. Negligence Claims

Defendants also assert a substantial right exists for this Court to exercise interlocutory jurisdiction over their appeal of the trial court's denial of their motion to dismiss Plaintiff's negligence-based claims regarding Defendants' speech. Defendants argue the trial court's failure to dismiss Plaintiff's negligence-based claims misapplies defamation standards including the actual malice standard, denies them applicable defenses including the truth, and also presents the danger of inconsistent verdicts.

"An order implicating a party's First Amendment rights affects a substantial right." *Sherrill v. Amerada Hess Corp.*, 130 N.C. App. 711, 719, 504 S.E.2d 802, 807 (1998). Our Courts have recognized, when considering a motion for summary judgment, a misapplication of the actual malice standard could have a chilling effect on a defendant's right to free speech and implicates a substantial right. *Boyce & Isley,*

*PLLC v. Cooper* (*Boyce II*), 169 N.C. App. 572, 575-76, 611 S.E.2d 175, 177 (2005) (citing *Priest v. Sobeck*, 357 N.C. 159, 579 S.E.2d 250 (2003)).  In *Boyce II*, however, this Court held the denial of a Rule 12 motion to dismiss does not implicate a substantial right as could arise by the denial of a motion for summary judgment under Rule 56:

> misapplication of the actual malice standard on summary judgment could lead to some loss or infringement on a substantial right, whereas denial of the 12(c) motion here will not.  On a motion for summary judgment the forecast of evidence is set.  A court can more adequately determine whether the forecast evidence (affidavits, depositions, exhibits, and the like) presents a factual issue under the correctly applied legal standard for actual malice.  In reviewing the allegations of the pleadings as in ruling on a 12(c) motion, the court need only decide if the elements of the claim, perhaps including actual malice, have been alleged, not how to apply that standard.  An incorrect application of the actual malice standard to deny summary judgment results in trial, whereas denial of a 12(c) motion results in further discovery and possibly summary judgment or other proceedings.  Although we recognize that the First Amendment protects substantial rights, there is nothing here to suggest an immediate loss of these rights. . . . Any defenses or arguments that plaintiffs cannot actually prove their allegations in the complaint due to lack of evidence regarding malice will not be immediately lost if this case proceeds.

*Id.* at 577-78, 611 S.E.2d at 178.

Although the ruling in *Boyce II* dealt with a Rule 12(c) motion for judgment on the pleadings, a Rule "12(c) motion is more like a [Rule] 12(b)(6) motion than one for summary judgment, because at the time of filing typically no discovery has occurred,

no evidence or affidavits are submitted, and a ruling is based on the pleadings themselves—along with any properly submitted exhibits." *Id.* at 576, 611 S.E.2d at 177-78. Where, as here, the interlocutory appeal is asserted on denial of a Rule 12(b)(6) motion, and not under a Rule 12(c) motion for judgment on the pleadings, the reasoning stated in *Boyce II* is stronger.

Alternatively, Defendants argue the risk of inconsistent verdicts on the defamation and negligence claims represents a substantial right. However, our Courts have only found a substantial right in the risk of inconsistent verdicts between multiple trials on the same issues, not between multiple claims in the same trial. "The avoidance of one trial is not ordinarily a substantial right. . . . [T]he right to avoid the possibility of two trials on the same issues can be a substantial right." *Green v. Duke Power Co.*, 305 N.C. 603, 608, 290 S.E.2d 593, 596 (1982) (citations and alterations omitted).

Defendants' second issue is properly dismissed as interlocutory. Defendants have not shown they possess a substantial right which would be jeopardized absent appellate review, at least upon denial of their Rule 12(b)(6) motion to dismiss. We express no opinion on the merits, if any, of Plaintiff's claims or Defendants' arguments and defenses.

### III. Issue

In the remaining issue, Defendants argue the trial court erred in denying their motion to dismiss Plaintiff's claims based on the assertion of absolute privilege.

## IV. Standard of Review

"We review *de novo* a trial court's ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Watts-Robinson v. Shelton*, 251 N.C. App. 507, 509, 796 S.E.2d 51, 54 (2016).

Generally, immunities from suit and assertions of privileges are strictly construed in North Carolina. *See, e.g., Sims v. Charlotte Liberty Mut. Ins. Co.*, 257 N.C. 32, 37, 125 S.E.2d 326, 330 (1962) (physician-patient privilege); *Scott v. Scott*, 106 N.C. App. 606, 612, 417 S.E.2d 818, 823 (1992) (attorney-client privilege), *aff'd*, 336 N.C. 284, 442 S.E.2d 493 (1994).

"In deciding whether a statement is absolutely privileged, a court must determine (1) whether the statement was made in the course of a judicial proceeding; and (2) whether it was sufficiently relevant to that proceeding. These issues are questions of law to be decided by the court." *Harman v. Belk*, 165 N.C. App. 819, 824, 600 S.E.2d 43, 47 (2004) (citations omitted). "The trial court's conclusions of law are reviewed *de novo*." *Shirey v. Shirey*, __ N.C. App. __, __, 833 S.E.2d 820, 825 (2019).

## V. Analysis

In North Carolina, absolute privilege or "complete immunity" from suit applies to communications which are:

> so much to the public interest that the defendant should speak out his mind fully and freely, that all actions in respect to the words used are absolutely forbidden, even though it be alleged that they were used falsely, knowingly, and with express malice. This complete immunity obtains only *where the public service or the due administration of justice requires it, e.g.*, words used in debate in Congress and the State Legislatures, reports of military or other officers to their superiors in the line of their duty, everything said by a judge on the bench, by a witness in the box, and the like. In these cases the action is absolutely barred.

*Bouligny, Inc. v. Steelworkers*, 270 N.C. 160, 170-71, 154 S.E.2d 344, 354 (1967) (emphasis original) (citations omitted).

These communications represent the core of speech protected by absolute privilege. As a claimant of absolute privilege departs from this protected core, the claim to the immunity from suit diminishes.

> [T]he protection from liability to suit attaches by reason of the setting in which the defamatory statement is spoken or published. The privilege belongs to the occasion. It does not follow the speaker or publisher into other surroundings and circumstances. The judge, legislator or administrative official, when speaking or writing apart from and independent of the functions of his office, is liable for slanderous or libelous statements upon the same principles applicable to other individuals.

*Id.* at 171, 154 S.E.2d at 354.

This Court has stated, "an attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a

- 10 -

judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." *Jones v. Coward*, 193 N.C. App. 231, 234, 666 S.E.2d 877, 879 (2008) (quoting Restatement (Second) of Torts § 586 (1977)).

"Our courts have held that statements are 'made in due course of a judicial proceeding' if they are submitted to the court presiding over litigation or to the government agency presiding over an administrative hearing and are relevant or pertinent to the litigation or hearing." *Burton v. NCNB*, 85 N.C. App. 702, 705, 355 S.E.2d 800, 802 (1987) (citations omitted).

The trial court ruled Defendants' assertion of absolute privilege over Meyers' statements departs and deviates from the core speech protected by the judicial-proceeding privilege in two significant ways: (1) Defendants were investigatory counsel, and not litigation counsel, for Cardinal in the newly-commenced judicial proceeding; and, (2) Defendants' speech occurred during a press conference to the media and not while in the courtroom. Defendants also argue Cardinal's status as a statutorily-created entity and being a local political subdivision cloaks their investigation and statements as a quasi-judicial or legislative proceeding.

A. Investigatory Counsel

The trial court determined: "Defendant Meyers's statements are not entitled to an absolute privilege [because he] was not counsel for the Board in the judicial proceeding . . . ." The trial court did not provide any precedent or legal basis for

distinguishing Meyers' role as counsel retained by the Board to investigate Plaintiff from the status of "counsel for the Board in the judicial proceeding."

The trial court's ruling implies that Cardinal's litigation counsel would be entitled to a greater claim to absolute privilege than Defendants for making the same statements by virtue of their role in this judicial proceeding. We see no basis for the trial court's distinctions between in-house, investigatory, and litigation counsel.

Cardinal hired Defendants to conduct its investigation into Plaintiff's conduct as its CEO and his interactions with other Cardinal senior officers based upon the audit and intervention from DHHS. Defendants' investigation formed the basis for Cardinal's allegations and claims in their civil suit filed against its former CEO. Cardinal had filed a civil proceeding against Plaintiff in the superior court earlier the same day as the press conference was held. The complaint and judicial proceeding were both predicated upon Defendants' investigation and the findings and allegations made about Plaintiff in their report to the Board.

Plaintiff's complaint concedes Defendant Meyers' statements were made in a press conference held at 10:30 a.m. on 26 March 2018, an hour and a half after Cardinal had filed its lawsuit against Plaintiff. Plaintiff alleged Defendant Meyers "knew that [Cardinal's] lawsuit . . . would be based on his investigation," and "agreed to participate in a press conference about [Plaintiff's] alleged misconduct in conjunction with the filing of the lawsuit." Plaintiff further alleged and acknowledged

Defendant Meyers' statements "mirrored" the allegations asserted in Cardinal's complaint, and his PowerPoint repeated "the same misconduct as was alleged in the lawsuit filed by Cardinal earlier that day."

"Where the relation of attorney and client exists, the law of principal and agent is generally applicable." *Bank v. McEwen*, 160 N.C. 414, 420, 76 S.E. 222, 224 (1912). It is undisputed that Defendants' statements at the press conference "mirrored" allegations asserted in Cardinal's complaint. Defendants acted as Cardinal's counsel and agents throughout the investigation and press conference, just as the litigation counsel did when it filed the complaint against Plaintiff on Cardinal's behalf. Defendants' claim to absolute privilege flows through their principal-agent relationship with Cardinal. The immunity from suit protects the principal. If the principal is immune, its agents are as well. *See id.*

We cannot distinguish Defendants' statements based on whether they had been retained by Cardinal as counsel for investigation or litigation. Preparation for litigation is as much the practice of law as is litigating the claims. *See* N.C. Gen. Stat. § 84-2.1(a) (2019). The trial court erred by distinguishing Defendants' role as investigatory versus litigation counsel as a factor in its analysis.

### B. Out-of-Court Press Conference

We next analyze the venue or "occasion" where and when the statements were made. *See Bouligny, Inc.*, 270 N.C. at 171, 154 S.E.2d at 354. The trial court

concluded Defendants were not entitled to immunity from suit because "the statements were made outside of the proceeding at a press conference attended by members of the media." The trial court denied dismissal and reasoned this privilege "does not apply to statements made outside of the judicial proceeding, particularly when the statements are made to the media," citing *Andrews v. Elliot*, 109 N.C. App. 271, 275, 426 S.E.2d 430, 432-33 (1993).

The trial court's order denying Defendants' motion partially relied upon this Court's decision in *Andrews*, wherein one attorney sued another for mailing a copy of a letter containing allegedly slanderous and libelous statements about him to a newspaper, where it was seen and read by at least three of their employees. *Id.* at 272, 426 S.E.2d at 431. The letter did not concern pending litigation, however; it merely threatened litigation after accusing the other attorney of various criminal and ethical misdeeds. *Id.* at 273, 426 S.E.2d at 431.

Plaintiff cites this Court's earlier decision in *Boston v. Webb* to support the trial court's decision. *Boston v. Webb*, 73 N.C. App. 457, 460, 326 S.E.2d 104, 106 (1985), *disc. rev. denied*, 314 N.C. 114, 332 S.E.2d 479. In *Boston*, a detective sergeant was fired from the city police department. *Id.* at 458, 326 S.E.2d at 105. The detective sergeant appealed to the city manager, who upheld the termination. *Id.* After conducting an investigation into the firing and briefing the city council, the city manager wrote and published a press release explaining the termination decision. *Id.*

The detective sergeant filed a defamation claim against the city manager. *Id.* at 457, 326 S.E.2d at 104.

This Court held the city manager was not entitled to an absolute privilege for the statements made in his press release. *Id.* at 460, 326 S.E.2d at 106. Both *Boston* and the present case concern statements made to the press following an investigation. Unlike the present case, however, the city manager's press release in *Boston* was independent of any filed or pending lawsuit. The city manager had investigated and ruled upon the detective sergeant's appeal prior to publishing his release and statements to the media. *Id.* at 458, 326 S.E.2d at 105.

Although neither *Andrews* nor *Boston* squarely addresses the denial of absolute privilege for statements made to the media while a judicial proceeding is ongoing, no case Defendants cite demonstrates why the privilege should be extended in this case to carry their burden to overcome the presumption of correctness and reverse the trial court's order.

Defendants cite a series of cases recognizing our courts have defined "the phrase 'judicial proceeding' . . . broadly, encompassing more than just trials in civil actions or criminal prosecutions." *Harris v. NCNB*, 85 N.C. App. 669, 673, 355 S.E.2d 838, 842 (1987) (citation omitted). These cases represent small and incremental steps, extending the absolute privilege of complete immunity from suit beyond the protected core of in-court speech. *See, e.g.*, *Scott v. Statesville Plywood & Veneer Co.*,

240 N.C. 73, 76, 81 S.E.2d 146, 149 (1954) (privilege extended to statements made in pleadings and other papers filed in a judicial proceeding); *Jones*, 193 N.C. App. at 234, 666 S.E.2d at 880 (privilege extended to counsel's statements or questions to a potential witness in preparation of pending litigation); *Rickenbacker v. Coffey*, 103 N.C. App. 352, 357-58, 405 S.E.2d 585, 588 (1991) (privilege extended to potential witness' statements to counsel at pre-deposition conference); *Burton*, 85 N.C. App. at 707, 355 S.E.2d at 803 (privilege extended to out-of-court statements made between the parties or their attorneys during pending litigation); *Harris*, 85 N.C. App. at 674, 355 S.E.2d at 842 (privilege extends to out-of-court communications between attorneys preliminary to proposed or anticipated litigation).

These cases extend the absolute privilege beyond the core of protected speech in the courtroom during a trial. These extensions are logical and practical, and each protected communication and testimony furthers the purpose of the privilege. The "public policy underlying this privilege is grounded upon the proper and efficient administration of justice. Participants in the judicial process must be able to testify or otherwise take part without being hampered by fear of defamation suits." *Jones*, 193 N.C. App. at 234, 666 S.E.2d at 879 (citation and internal quotation marks omitted).

Defendants have not shown extension of absolute privilege to statements made by counsel during an out-of-court press conference would further this core protected

purpose. Our immunity from suit precedents appropriately protect communications made between parties, their counsel, or the court itself, from the fear of defamation suits. A press conference to the media is not communication between the parties, their counsel, nor with or concerning the court.

Absolute privilege appropriately protects statements asserted in a pleading filed with the trial court and invoking judicial process. *Scott*, 240 N.C. at 76, 81 S.E.2d at 149. Statements made outside the proceeding to the public or media representatives at a press conference, even those averments that "mirror" allegations made in a filed complaint, deviate from and stray too far beyond the core and "occasion" of speech to invoke immunity from suit. Such immunity cannot be justified by asserted public interest beyond encouraging frankness and protecting testimony, communications between counsel *inter se* or with the court, and participation within the judicial proceeding. *See id.*

A press conference is neither an inherent nor critical component of a judicial proceeding. To hold otherwise would enable any litigant to file barratrous or sanctionable pleadings containing scurrilous, false, or defamatory language, then immediately convene a press conference outside the courthouse to further disseminate and re-publish those otherwise defamatory statements, while asserting immunity from challenge or to being answerable in court.

This potential conduct ranges too far afield from the core of protected speech subject to absolute privilege. Our Supreme Court noted long ago: "The privilege belongs to the occasion. It does not follow the speaker or publisher into other surroundings and circumstances." *Bouligny, Inc.*, 270 N.C. at 171, 154 S.E.2d at 354.

Construing the immunity of absolute privilege narrowly, as we must, the inverse concern of chilling speech by the threat of defamation suits is not so great as to necessitate absolute immunity from suit for statements made at out-of-court press conferences during pending litigation. *See id.* A litigant, or their counsel, who gives a press conference during a judicial proceeding is not deprived of defenses nor is necessarily liable for their statements. Neither are they absolutely immune from suit challenging and asserting defamatory conduct.

The venue or "occasion" for Defendants' statements weighs heavily against recognizing absolute privilege in this case, far more so than the distinction between litigation and investigatory counsel. Defendants have not shown that absolute immunity should extend from the courtroom during a judicial proceeding to an extrajudicial press conference, whether the speaker is litigation or investigatory counsel. Defendants' arguments claiming immunity from suit on the basis of the pending litigation are overruled.

## C. Quasi-Judicial Investigation

Defendants alternatively assert they are immune from suit for their statements resulting from their investigation of Plaintiff because that investigation was a quasi-judicial proceeding. The phrase "judicial proceeding" in the context of absolute privilege also encompasses quasi-judicial proceedings. *Harris*, 85 N.C. App. at 673, 355 S.E.2d at 842 (citation omitted). "Quasi-judicial" is "a term applied to the action, discretion, etc., of public administrative officers, who are required to investigate facts, or ascertain the existence of facts, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature." *Angel v. Ward*, 43 N.C. App. 288, 293, 258 S.E.2d 788, 792 (1979) (citation and alterations omitted).

In *Angel,* a partner of a certified public accounting firm telephoned an Internal Revenue Service agent's supervisor to complain about the agent's treatment of his firm's clients. *Id.* at 289, 258 S.E.2d at 789. The agent's supervisor requested the partner file his complaints in a written letter, which he did. *Id.* at 289, 258 S.E.2d at 789-90. The agent was subsequently fired. *Id.* at 289, 258 S.E.2d at 790. She sued the partner and his firm alleging libel *per se* for the remarks made in his letter to her supervisor. *Id.*

This Court held the partner's written remarks were libelous *per se*, as they tended to impeach the agent in her trade or profession. *Id.* at 291, 258 S.E.2d at 791. However, this Court also affirmed the trial court's ruling the CPA's remarks were

absolutely privileged in the due course of a quasi-judicial proceeding. *Id.* at 293, 258 S.E.2d at 792. This Court determined the letter was requested by the agent's supervisor in the quasi-judicial process of evaluating the agent in connection with her employment. *Id.*

> Had defendants merely mailed the letter to plaintiff's superiors, the communication would have been entitled to a qualified privilege. However, in the instant case, defendants admittedly submitted their letter upon the request of plaintiff's immediate supervisor, who was putting together an evidentiary file to support his superior's decision to terminate plaintiff's employment with the Internal Revenue Service.

*Id.* at 293, 258 S.E.2d at 791-92.

Defendants liken their press conference to the letter sent in *Angel*, because it was held at the direction of Cardinal, a local political subdivision. *See* N.C. Gen. Stat. § 122C-116(a). In this argument, the extension of absolute privilege flows not from judicial immunity, but rather from legislative immunity. Defendants do not cite any binding authority from our courts on this extension of legislative immunity to Cardinal, but do cite cases from other states where the absolute privilege has been extended to "lesser legislative bodies," such as local political subdivisions. *See, e.g.*, *Sanchez v. Coxon*, 854 P.2d 126, 128 (Ariz. 1993) (privilege extended to town council meeting); *Noble v. Ternyik*, 539 P.2d 658, 660 (Or. 1975) (privilege extended to port commission meeting).

No cases Defendants cite, however, extend the legislative immunity to statements made during a press conference to the media. The only cited case in which immunity from suit was extended beyond a lesser legislative body's official meeting itself, involved statements made by one city council member to other city council members, and also statements potentially overheard by patrons of a deli restaurant "within listening distance." *Issa v. Benson*, 420 S.W.3d 23, 28-29 (Tenn. Ct. App. 2013).

The court in *Issa* held the statements made to other city council members were protected by legislative immunity. *Id*. at 28. The court also held the council member's statements at the deli were in response to a threat of litigation against the city, were "preliminary to proposed litigation," and were protected by judicial immunity. *Id*. at 29.

If legislative immunity applies to Cardinal and its Board, Defendants' argument would only appropriately cover statements made by the Board's members in its meetings, and possibly Defendants' statements to the Board at its behest. Defendants cite no authority, binding or persuasive, to extend the legislative immunity afforded to quasi-judicial, "lesser legislative bodies," to statements made by agents, including counsel of such a body, to the public or media representatives in a press conference held at the body's request or direction.

This Court declined to hold that statements made by the city manager in the press release in *Boston* was "issued in the course of a judicial *or quasi-judicial* proceeding." *Boston*, 73 N.C. App. at 461, 326 S.E.2d at 106 (emphasis supplied). As discussed above, a press conference ventures too far afield from the core of protected speech to be entitled to absolute immunity from suit under legislative immunity in a quasi-judicial proceeding. *See id.*

Defendants fail to show entitlement to absolute immunity from suit flowing from either Cardinal's pending suit against Plaintiff as a judicial proceeding, or their investigation of Plaintiff as a quasi-judicial proceeding. Defendants' appeal on this issue is properly dismissed as interlocutory.

## VI. Petition for Writ of Certiorari

Defendants have also filed with this Court a petition for writ of certiorari as an alternative to their assertion of substantial rights to an interlocutory appeal. "Certiorari is a discretionary writ, to be issued only for good and sufficient cause shown." *State v. Grundler*, 251 N.C. 177, 189, 111 S.E.2d 1, 9 (1959) (citation omitted). "A petition for the writ must show merit or that error was probably committed below." *Id.* (citation omitted).

As discussed above, Defendants have not shown a substantive right in jeopardy to merit an interlocutory review at the Rule 12 stage in the proceedings. Similarly, we find Defendants have also not shown "good and sufficient cause" for us to allow

Defendant's petition and issue our writ of certiorari in this case. In the exercise of our discretion and pursuant to Appellate Rule 21, we decline to issue the writ of certiorari. *See* N.C. R. App. P. 21(a)(1) ("The writ of certiorari *may* be issued in appropriate circumstances . . . to permit review of the judgments and orders of trial tribunals when . . . no right of appeal from an interlocutory order exists[.]") (emphasis supplied).

## VII. <u>Conclusion</u>

Defendants fail to show they possess "a substantial right which would be jeopardized absent a review prior to a final determination on the merits." *Jeffreys*, 115 N.C. App. at 380, 444 S.E.2d at 254. Although the trial court's distinction between litigation and investigatory counsel is unpersuasive and without basis, the trial court did not err in declining to extend absolute immunity from suit to Defendants in this case.

Defendants' statements made at the out-of-court press conference during pending litigation are too far afield to be considered "made in due course of a judicial proceeding." *Burton*, 85 N.C. App. at 705, 355 S.E.2d at 802. Defendants' statements made at the out-of-court press conference following their investigation into Plaintiff's conduct on behalf of Cardinal do not fall within the immunity afforded to lesser legislative bodies. *See Boston*, 73 N.C. App. at 461, 326 S.E.2d at 106. Defendants' appeal as to their assertion of absolute privilege is dismissed as interlocutory.

Asserted misapplication of the actual malice standard does not affect a substantial right at the Rule 12 motion to dismiss stage of litigation, as it could at a hearing under Rule 56 for summary judgment. *Boyce II*, 169 N.C. App. at 577-78, 611 S.E.2d at 178.

Defendants have failed to show either a substantial right as a basis for interlocutory appeal or good and sufficient cause as a basis for our discretionary grant of a writ of certiorari. Defendants' appeal on this issue is dismissed as interlocutory and this cause is remanded for further proceedings.

We express no opinion on the validity, if any, of Plaintiff's claims nor Defendant's defenses thereto. *It is so ordered.*

DISMISSED AS INTERLOCUTORY.

Judge BERGER concurs.

Judge BROOK concurs in part and concurs in the result in part with separate opinion.

BROOK, Judge, concurring in part and concurring in the result in part.

I concur in the majority opinion insofar as it holds that we must dismiss this interlocutory appeal because it does not implicate a substantial right and in its denial of Defendant's petition for writ of certiorari. More specifically, I concur in the holding that we must reject the assertion of a substantial right to exercise interlocutory jurisdiction over the trial court's denial of Defendant's motion to dismiss Plaintiff's negligence-based claims. I further concur in the majority's holding that "Defendants have not shown that absolute immunity should extend from the courtroom during a judicial proceeding to an extrajudicial press conference, *whether the speaker is litigation or investigatory counsel.*" *Topping, supra* at ___ (emphasis added).

I do not join section V.A. of the majority's opinion labelled "Investigatory Counsel." First, this section is not necessary to arrive at the agreed upon dismissal. Further, I disagree with the majority's contention that the trial court's distinction between litigation and investigatory counsel is without basis. In fact, Judge Crosswhite cites *Andrews v. Elliot*, 109 N.C. App. 271, 275, 426 S.E.2d 430, 432-33 (1993), for the proposition that "judicial proceedings privilege . . . does not apply to statements made outside the judicial proceeding" and thus does not shield the statement of Defendant Meyers as he "was not counsel for the Board in [its] judicial proceeding[.]" While we need not decide the merits of this issue, I cannot agree that the trial court's assertion here was baseless.

*Brook, J., concurring in part and concurring in the result in part*

Accordingly, and with respect, I concur in part and concur in the result in part.